UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 20-1534(DSD/BRT)

Daniel'la Deering,

       Plaintiff,

v.                                                    **ORDER**

Lockheed Martin Corporation,

       Defendant.


    Clayton D. Halunen, Esq. and Halunen Law, 1650 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for plaintiff.

    Michael S. Burkhardt, Esq. and Morgan, Lewis & Bockius LLP, 1701 Market Street, Philadelphia, PA 19103, counsel for defendant.


    This matter is before the court upon the motion for summary judgment by defendant Lockheed Martin Corporation and the motion for partial summary judgment by plaintiff Daniel'la Deering.  Based on a review of the file, record, and proceedings herein, and for the following reasons, Lockheed Martin's motion is granted in part and Deering's motion is denied.


**BACKGROUND**

    This employment discrimination action arises from plaintiff Daniel'la Deering's termination from Lockheed Martin.  Deering is an African-American female attorney.  Before joining Lockheed

Martin, Deering had approximately eight years of legal experience and six additional years of other professional work experience. Deering Decl. ¶ 1.  Lockheed Martin hired Deering in 2002 as an attorney in its Rotary and Mission Systems (RMS) division.  In that capacity, Deering worked on domestic and international contracts, corporate governance, real estate, environmental, acquisitions, employment and labor, securities, government contracting, complex litigation, and regulatory compliance. Deering Decl. ¶ 2; id. Ex. A.

Maryanne Lavan, formerly a defendant is this case, is the general counsel for Lockheed Martin, and was responsible for making hiring, firing, and promotion determinations within the Lockheed Martin legal department.  Lavan Decl. ¶ 1.  Kenneth Bastian, also originally named as a defendant, was, at relevant times, the vice president and associate general counsel of RMS and Deering's direct supervisor.  Bastian Decl. ¶¶ 1-2.  Deering alleges that Lockheed Martin, through Lavan, who is white, discriminated against African-American applicants and employees by only hiring and elevating white candidates.  At times relevant to this case, there was only one African-American vice president, Susan Dunnings, who was appointed by Lavan's successor.  Dunnings Dep. at 153:16-18.

In 2010, Deering was given the title of Deputy General Counsel, which she understood to be a "stepping stone" to becoming

a vice president in the legal department.  Deering Decl. ¶ 6.  In 2012, Lockheed Martin promoted Deering to Director and Associate General Counsel, Labor & Employment for RMS.  Bastian Decl. ¶ 3.  Bastian, a white male, created the role for Deering after Lockheed Martin eliminated her previous position.  Bastian Dep. at 225:22-26:12; Bastian Decl. ¶ 3.  Deering was displeased that her focus would be solely on labor and employment matters, but she took on the role anyway.  Deering Decl. ¶ 7.

From 2014 to 2016, Bastian evaluated Deering's performance favorably, giving her an "exceeds expectations" rating each year.  Bastian Decl. ¶ 4.  That rating is the second highest possible rating and, in 2016, was among the highest rating Bastian gave to any of his direct reports.  Jacobs Decl. Ex. 7, at 5.  In 2017, Bastian gave Deering an "Achieved" expectations rating due to her management of a jury trial that resulted in a $51.6 million jury verdict against Lockheed Martin.[1]  Bastian Decl. ¶¶ 5, 6; Jacobs Decl. Ex. 14, at 7.[2]  As her supervisor, Bastian also received a

---

[1]  In 2015, one of Deering's other cases (Balderrama) resulted in an unexpectedly adverse jury award.  Deering Dep. at 215:17-16:13.  That award was overturned on appeal, however, and did not affect Deering's performance evaluation.  See Jacobs Decl. Ex. 9, at 2-5.

[2]  In that case (Braden), Deering hired Tamika Newsome, who is also African American, as outside counsel.  Newsome Decl. ¶ 11.  Deering and Newsome worked together many times over the years (including on Balderrama), to mostly positive results for Lockheed Martin.  See id. ¶¶ 7-8.  According to Newsome, Lavan openly

lower-than usual performance evaluation that year, as both were deemed responsible for the adverse verdict.  Bastian Decl. ¶ 5; Lavan Decl. ¶ 2; Lavan Dep. at 230:10-25; Jacobs Decl. Ex. 17, at 8.  Lavan was particularly disappointed that Deering did not properly assess the risks of the case and failed to conduct a mock jury before trial.  Lavan Dep. at 39:11-40:10, 48:19-50:10.

Deering acknowledges that Lavan's criticism regarding the case was "equally doled out" to her and Bastian.  Deering Dep. at 303:17-304:1.  She claims, however, that her less-than-glowing review was due to racism rather than actual performance issues. She bases this claim on her belief that Lockheed Martin - and Lavan in particular - does not fairly consider African-American attorneys for promotion to vice president positions.  She asserts that between 2010 and 2018, Lavan elevated seven white attorneys and no African-American attorneys to vice president.  Deering Decl. ¶ 12; Lavan Dep. at 99:8-17.  Lavan acknowledges considering, but not selecting, at least three African Americans in succession

---

berated her and Deering for the Braden verdict in ways she would not have had they been white attorneys.  Id. ¶ 18.  She believes that Lavan's "venom" and "hostility" towards them was due to "discriminatory animus," rather than concern over the adverse verdict.  Id. ¶¶ 16, 18, 19.  Balderrama and Braden were Deering's only two trials when Lavan was general counsel.  Deering Dep. at 216:17-17:19.

planning within the legal department.  Lavan Dep. at  111:22-18:15.  Deering was not among them.  <u>See</u> Lavan Decl. ¶ 6.

Deering asserts that Lavan never bothered to inquire as to her qualifications for vice president, despite her extensive experience at Lockheed Martin and her previous roles outside the company.  According to Lavan, Deering simply lacked the kind of legal experience she was looking for in each of the vice president roles she filled between 2016 and 2018.  Lavan Decl. ¶¶ 5-14. Lavan also believed that Deering's adverse jury verdicts in 2015 and 2017 reflected a lack of judgment that disqualified her from being considered for a vice president position.  Lavan Decl. ¶ 6.

Deering argues that Bastian failed to recommend her for a vice president role even though he routinely gave her positive reviews, save the 2017 review at issue, due to discriminatory animus.  Deering also provides a recitation of previous race discrimination allegations brought by or on behalf of employees against Lockheed Martin over the years, and what she deems Lockheed Martin's discriminatory practices.  <u>See</u> ECF No. 156, at 6-8.  The court will not set forth those assertions in detail, as they do not tend to support Deering's claim that she was personally discriminated against due to her race.

In May 2018, Deering filed an internal appeal of her 2017 performance review.[3]   See ECF No. 137-1.   To support her appeal, Deering attached documents that included communications with internal business partners and lawyers, outside counsel, and human resources personnel.   Deering Decl. ¶ 26.   She acknowledges that those communications included "business-related/non-privileged" and "law-related/privileged" information.   Id.   She believed that the communications, including those that were privileged, were the "best evidence to refute the claims of poor performance alleged in [her] 2017 performance rating and to support [her] performance-based claims of discrimination."   Id.   Deering was unaware of any internal policy prohibiting her from using privileged documents to support a performance review appeal.   Id. ¶ 27.

In August 2018, Deering's counsel, William Egan contacted Lavan to notify her of Deering's claim of race discrimination and to discuss a resolution.   Egan Decl. ¶ 3.   On September 17, 2018, Egan submitted a settlement demand to counsel for Lockheed Martin, which heavily referenced Deering's 2017 performance review appeal. Id. ¶ 5.   According to Deering, Egan did not include the documents that Deering attached to her appeal in the letter, as they were

_____

[3]   It appears that Deering may not have fully pursued the appeal given that the review process for 2018 was set to begin soon.   See Egan Decl. Ex. 2, at 1.

6

too voluminous, but he did reference them as evidence of discrimination.  ECF No. 146, at 11.  The parties negotiated a possible settlement over the next couple of months but were unable to reach agreement.

During the negotiations, Egan notified Lockheed Martin that he intended to file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) if they could not reach agreement.  Egan Decl. Ex. 2.  He sent a draft of the EEOC charge, which included "a reference" to the performance review appeal, but it does not appear that he provided or specifically mentioned any documents that were attached to the appeal.  Id. ¶ 7; id. Ex. B. At no time during the appeal process or the negotiations did Lockheed Martin warn Deering not to use the privileged documents she included in the appeal in her EEOC charge.  Id. ¶¶ 6, 8-11; id. Exs. 2, 3.

On November 13, 2018, Egan filed an EEOC charge on Deering's behalf in which she alleged race discrimination as exhibited by her allegedly lower than warranted reviews – including those in which she was rated as exceeding expectations.[4]  See Jacobs Decl.

---

[4] Deering claims that her performance routinely warranted the highest rating – "significantly exceeded" expectations – a rating she never received.

Ex. 6-1.  She also based on her charge on discrimination in pay, promotion (or lack thereof), and working conditions.  Id. at 6-7. Deering submitted the documents that she attached to her appeal to the EEOC, including the privileged documents at issue.  Lavan Dep. at 135:14-23; Dunnings Dep. at 214:19-15:1; Deering Dep. at 63:10-16.[5]

Among other things, the documents included emails between in-house lawyers at Lockheed Martin (including Deering) and Lockheed Martin's outside counsel regarding a legal matter in Romania involving a personnel issue.  Those communications included legal analysis and advice.  See ECF No. 132, Ex. 18.  The documents also included other communications between Lockheed Martin's in-house and outside counsel on other matters.  See id.  Deering did not redact or otherwise indicate the documents were privileged. Deering Dep. at 26:2-23.  Rather, she simply took documents from her desk that she believed would show that she was better at her job than her evaluation indicated, and gave them to Egan.  Id. at 80:13-25.  Deering testified that she did not need to ask Lockheed Martin for permission to provide the documents to her counsel, and later the EEOC, because she was "using the documents properly in the course of [her] employment."  Id. at 64:14-16.

---

[5]  In this case, Lockheed Martin listed the documents on a privilege log, without objection from Deering.

It appears to be undisputed that this is the first time a Lockheed Martin lawyer disclosed privileged information to a third party. Midgley Decl. ¶ 13; Dunnings Dep. at 91:17-92:3; Lavan Dep. 166:17-25, 325:9-23; Deering Dep. at 86:1-9, 88:18-90:6, 299:3-19. Deering argues that Lockheed Martin lacks training and policies regarding identifying and protecting privileged information, so she should not be held responsible for providing any such information to the EEOC. Deering Dep. at 299:8-13; Deering Decl. ¶ 27. She also argues that she was entitled to use the documents to support her claim because they were in her work files. Lockheed Martin responds that, as an attorney, Deering knew or at least should have known that it was improper and a violation of her professional responsibilities to share the documents with third parties.

Lockheed Martin referred the matter to its RMS Disciplinary Review Committee (DRC) to determine whether Deering's disclosure of privileged information warranted disciplinary action. Midgley Decl. ¶ 4. Bastian was a participant on the committee but was not a decisionmaker in the review. Id. ¶¶ 7-8. The DRC determined that although Deering had a right to file an EEOC complaint, she did not have the right to disclose privileged or other sensitive and confidential information to the EEOC. Id. ¶ 10; see also Lavan Dep. at 145:23-47:8 ("[Deering] had an absolute right to submit an

EEOC complaint, what she didn't have the right to do was attach attorney-client privileged communication."). It also concluded that she took no steps to redact or otherwise protect the information from disclosure. Midgely Decl. ¶ 11. Given Deering's role as corporate lawyer, the DRC also concluded that she "held a special position of trust to protect Lockheed's privileged and confidential materials" which made her disclosures "even more egregious." Id. ¶ 12. The DRC was unaware of any similar conduct by a company lawyer. Id. ¶ 13. The DRC determined that Deering's conduct was so serious that it merited termination and, on December 27, 2018, Lockheed Martin informed her that she was terminated "for inappropriately disclosing to external third parties Lockheed Martin confidential and sensitive information as well as company attorney client privileged information." Egan Decl. Ex. C; Midgely Decl. ¶ 15.

Deering asserts that Lockheed Martin failed to follow company policy in the DRC review. She specifically argues that the DRC did not interview her as part of the process to assess any mitigating circumstances or her willingness to correct the problem. Deering Decl. ¶ 21. She also takes issue with Bastian's role on the DRC, even if he was not a decisionmaker, because she believes he was biased given her accusation of discrimination. With respect to comparators, she provides numerous examples of

other employees who disclosed confidential or sensitive documents to third parties but were not terminated.  <u>See</u> Jacobs Decl. Ex. 32.  It is undisputed, however, that none of those employees were lawyers and that none disclosed privileged information.

After her termination, Deering filed an amended charge of discrimination and retaliation with the EEOC.  <u>See</u> Egan Decl. Ex. 1.  On July 8, 2020, Deering commenced this action alleging race discrimination in violation of federal and state law (Counts I-III), retaliation in violation of federal and state law (Counts IV-VI), violation of the Equal Pay Act (EPA) (Count VII), aiding and abetting discrimination in violation of state law (Count VIII), defamation (Count IX), and intentional infliction of emotional distress (Count X).  The court granted defendants' motion to dismiss Counts VII through X of the complaint and dismissed Lavan and Bastian from the case.  ECF No. 46.  Lockheed Martin, the remaining defendant, now moves for summary judgment on the retaliation and discrimination claims and Deering moves for partial summary judgment as to liability on her retaliation claim.

## DISCUSSION

### I.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
A fact is material only when its resolution affects the outcome of
the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).   A dispute is genuine if the evidence is such that it could
cause a reasonable jury to return a verdict for either party.   See
id. at 252.

On a motion for summary judgment, the court views all evidence
and inferences in a light most favorable to the nonmoving party.
Id. at 255.   The nonmoving party, however, may not rest upon mere
denials or allegations in the pleadings, but must set forth
specific facts sufficient to raise a genuine issue for trial.
Celotex, 477 U.S. at 324.   A party asserting that a genuine dispute
exists - or cannot exist - about a material fact must cite
"particular parts of materials in the record."   Fed. R. Civ. P.
56(c)(1)(A).   If a plaintiff cannot support each essential element
of a claim, the court must grant summary judgment because a
complete failure of proof regarding an essential element
necessarily renders all other facts immaterial.   Celotex, 477 U.S.
at 322-23.

A plaintiff in an employment action may survive a motion for
summary judgment through direct evidence or through an inference
of unlawful discrimination under the burden-shifting analysis

of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973).
Direct evidence shows "a specific link between the alleged
discriminatory animus and the challenged decision, sufficient to
support a finding by a reasonable fact finder that an illegitimate
criterion actually motivated the employer's decision." <u>Humphries</u>
<u>v. Pulaski Cnty. Special Sch. Dist.</u>, 580 F.3d 688, 692 (8th Cir.
2009) (citation and internal quotation marks omitted).
Under <u>McDonnell Douglas</u>, a plaintiff must first establish a prima
facie case of discrimination.  <u>See</u> <u>id.</u>  The burden then shifts to
the employer to articulate a legitimate, nondiscriminatory reason
for its actions.  <u>See</u> <u>id.</u> at 692-93.  If the employer puts forth
such a reason, the plaintiff then must produce evidence
demonstrating that the employer's reason is pretext for unlawful
discrimination.  <u>See</u> <u>id.</u> at 693.

## II.  **Retaliation Claim (Counts IV, V, and VI)**

Deering bases her retaliation claim on her belief that
Lockheed Martin terminated her for filing an EEOC complaint.  She
does not appear to claim that she was retaliated against due to
her race.

To establish a prima facie case of retaliation under federal
and Minnesota law, Deering must show (1) she engaged in protected
conduct, (2) she suffered an adverse employment action, and (3)
there is a causal connection between the two.  <u>See Higgins v.</u>

13

_Gonzales_, 481 F.3d 578, 589 (8th Cir. 2007) (Title VII); _Bahr v._
_Capella Univ._, 765 N.W.2d 428, 433 (Minn. Ct. App. 2009) (MHRA).[6]
To establish a causal connection, plaintiffs must present evidence
that gives rise to an inference of retaliatory motive. _Kipp v._
_Mo. Hwy. & Trans. Comm'n_, 280 F.3d 893, 897 (8th Cir. 2002).
Moreover, an employee must show that "the desire to retaliate was
the but for cause of her termination — that is, that the
unlawful retaliation would not have occurred in the absence of the
alleged wrongful action or actions of the [defendant]." _Wright v._
_St. Vincent Health Sys._, 730 F.3d 732, 737 (8th Cir. 2013)
(citation and internal quotation marks omitted).

A person engages in protected conduct when she opposes acts
that she has a "good-faith, reasonable belief"
violate Title VII or the MHRA. _Barker v. Mo. Dep't of Corr._, 513
F.3d 831, 834 (8th Cir. 2008). There is no dispute that Deering
engaged in protected conduct by filing an EEOC complaint alleging
race discrimination. Nor is there any dispute that Deering
suffered an adverse consequence when she was fired after filing
her EEOC complaint. And, for purposes of this motion, Lockheed

---

[6] The court applies the same analysis to claims under Title
VII, § 1981, and the MHRA when, as here, the claims depend on
identical facts and theories. _See_ _Torgerson v. City of_
_Rochester_, 605 F.3d 584, 594 (8th Cir. 2010) (Title VII and
MHRA); _Takele v. Mayo Clinic_, 576 F.3d 834, 838 (8th Cir.
2009) (Title VII and § 1981).

Martin does not dispute that Deering has established the requisite causal connection between the EEOC complaint and her firing. ECF No. 125, at 24 n.12. Indeed, in a very practical sense, there is a connection between the two events because Lockheed Martin terminated Deering's employment given the content of her EEOC complaint.

The burden then falls on Lockheed Martin to articulate a legitimate, nondiscriminatory reason for its actions. Humphries, 580 F.3d 688, at 692−93. It has done so here by stating that it terminated Deering, not because she filed an EEOC complaint, but because she disclosed confidential and attorney-client privileged documents in support of her EEOC complaint. See Niswander v. Cincinnati Ins. Co., 529 F3d 714, (727-28) (6th Cir. 2008) (holding that an employee's delivery of confidential company documents to her counsel served as a "legitimate nondiscriminatory reason" for the company to terminate the employee's employment). As a result, Deering must produce evidence demonstrating that Lockheed Martin's reason for terminating her is pretext for unlawful discrimination. Humphries, 580 F.3d 688, at 693. The court finds that there is genuine issue of material fact on this point.

The court is satisfied that Deering improperly gave confidential and attorney-client privileged documents to her

attorney, who then provided those documents to the EEOC.[7]   See
Nesselrotte v. Allegheny Energy, Inc., No. 06-cv-1390, 2008 WL
2858401, at *8 (W.D. Pa. July 22, 2008) ("[T]he proper avenue for
a former employee (even an attorney) to obtain privileged and/or
confidential documents in support of his or her claims is through
the discovery process as set forth in the Federal Rules of Civil
Procedure, not by self-help."); Hellman v. Weisberg, No. 06-cv-
1465, 2007 WL 4218973, at *3–5 (D. Ariz. Dec. 3, 2007) (holding
that Title VII does not protect an employee's unauthorized
appropriation, copying, and dissemination of confidential
documents without a showing that disclosure was necessary to
preserve the documents; "[a] contrary rule would allow an employee
to immunize his unreasonable and malicious [acts] simply by filing
a discrimination complaint with a government agency.") (citation
and internal quotation marks omitted); see also Kidwell v.
Sybaritic, Inc., 784 N.W.2d 220, 233) (Minn. 2010) (Magnuson, J.
concurring) ("A lawyer may bring a whistleblower claim, but he or
she is not thereby relieved of the fiduciary obligations imposed
by the Rules of Professional Conduct, either before or after the
claim is brought.  Any disclosures of client confidences must be

---

[7] The court has reviewed at least some of the documents, see
ECF No. 132, Ex. 18, and agrees that they contain legal advice
conveyed within Lockheed Martin and between Lockheed Martin and
outside counsel.

within the strict confines of the Rules of Professional Conduct.").

The question, however, is whether Lockheed Martin lured Deering into providing the documents to third parties so that it could terminate her employment.  The facts in the record are sufficient to support such a theory.  First, Lockheed Martin was aware that Deering believed the documents to be necessary to her claims because she attached them to the appeal of her performance review.  Second, Egan and Lockheed Martin negotiated a possible resolution to Deering's allegations of discrimination for months before Deering filed her complaint.  During those negotiations, it appears that Egan referenced the confidential and privileged documents as key evidence of discrimination.  Yet, Lockheed Martin, which knew the content of the documents, does not seem to have cautioned Egan against using them in any possible future complaint.  Nor did Lockheed Martin take issue with the fact that Egan, a third party, had access to its confidential and privileged documents.  It may well be that Lockheed Martin could not envision Deering, as corporate counsel, attaching such sensitive documents to her EEOC complaint, and thus did not feel it necessary to caution against disclosure.[8]  Whether that is so is subject to debate, however, and an issue for the jury to decide.

---

[8]   Lockheed Martin's position notably does not address its silence as to Egan's knowledge of and apparent access to the

Under these circumstances, there is a factual dispute as to whether Lockheed Martin effectively drew the foul by not preventing (or at least cautioning Deering against) including the documents in her EEOC complaint.  Only a jury can decide whether that was the case and whether Deering's termination was therefore pretextual retaliation for filing her EEOC complaint.

**III. Race Discrimination Claim (Counts I, II, and III)**

Deering contends that Lockheed Martin discriminated against her on the basis of race by (1) giving her a lower-than-warranted performance review in 2017, (2) placing her in a limited role as labor and employment counsel to limit her avenues for promotion, and (3) failing to promote her despite her qualifications. Lockheed Martin responds that there are no facts in the record to support a finding that it bore any racial animus toward Deering. The court agrees with Lockheed Martin.[9]

An employer may not discriminate against an employee because of her race.  See 42 U.S.C. § 2000e-2(m) (Title VII); 42 U.S.C. §§ 1981, 1983 (Civil Rights Act of 1866); Minn. Stat. § 363A.08 subdiv. 2 (MHRA).  To establish a prima facie case of race

---

documents.

[9]  The court notes that even Deering is less than committed to this claim, as she devotes only four pages of her forty-seven-page brief to defending its merits.  See ECF No. 156, at 44-47. And rightly so, as the facts do not support her theories.

18

discrimination, Deering must show that she (1) is within the protected class, (2) was qualified to perform the job, (3) suffered an adverse employment action, and (4) has set forth facts that give rise to an inference of discrimination. Takele, 576 F.3d at 838.

There is no dispute that Deering is a member of a protected class or that Lockheed Martin's failure to promote her to vice president and to accurately evaluate her performance, if true, constitute adverse employment actions. Nor is there a dispute that Deering was qualified for her position. The remaining question, then, is whether the circumstances give rise to an inference of discrimination. They do not.

First, there are no facts to support Deering's theory that her 2017 performance review was lower than warranted based on racial animus. Indeed, the record firmly establishes that Deering's rating was based on the Braden verdict, in which Lockheed Martin was ordered to pay $51.6 million to the plaintiff. Bastian, her supervisor, was likewise subject to a lower-than-usual review for the same reason, and Deering acknowledged that criticism for the Braden verdict was "equally doled out." Deering has presented no evidence that any of her comparators were treated otherwise in the face of such a significant verdict against Lockheed Martin. The court is further unpersuaded by Newsome's subjective belief

that Lavan's criticism towards her and Deering after <u>Braden</u> was racially motivated.

Second, there is no indication in the record that Deering's assignment to a labor and employment role was due to discrimination and designed to thwart her desire for a promotion to vice president. Rather, Bastian created the role for Deering after her previous position was eliminated. Deering willingly accepted the role rather than leave Lockheed Martin. Deering proffers no facts to even suggest that racial animus was behind Lockheed Martin's decision to place her in that position. Moreover, any such claim is time barred given that Deering moved to the labor and employment role in 2012 and did not file her EEOC complaint until 2018. <u>See</u> 42 U.S.C. § 2000e-5(e)(1) (stating that a Title VII "charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred"); 28 U.S.C. § 1658 (providing that § 1981 claims must be brought within four years of the alleged misconduct); Minn. Stat. § 363A.28(3)(a) (establishing that MRHA claims must be filed within one year of the conduct at issue).

Third, Deering has failed to set forth facts showing that others were promoted to vice president over her due to her race. As an initial matter, any promotions that occurred before July 7, 2016, at the latest, are time barred under the authority set forth

above.  Further, Deering has presented no facts to establish that she was more qualified for the vice president positions than the candidates who were hired in her stead.  Instead, the record shows that she did not have the breadth of experience preferred for the job[10] and, independently, that Lavan was concerned about her judgment given the Balderrama and Braden verdicts.  Given those facts, the decision not to elevate Deering to vice president was legitimate and non-discriminatory.  There is no hint of racial animus in the facts surrounding this issue.

As a result, Deering has failed to make a prima facie showing of race discrimination.  Even if she had done so, however, the record is devoid of any evidence of pretext.

Lockheed Martin has proffered legitimate, nondiscriminatory reasons for its 2017 performance review, placement of Deering in a labor and employment role, and for not promoting her to vice president over other candidates.  Thus, the burden would shift back to Deering to demonstrate Lockheed Martin's proffered explanation is pretextual, and that discrimination is the true reason for the adverse actions.  Elnashar v. Speedway SuperAmerica,

---

[10]   The record also shows that Deering chose not to apply for other roles (even lateral roles) within the company that could have given her broader experience, thus increasing her chances of being promoted to vice president.  Bastian Dep. at 230:20-31:4; Deering Dep. at 141:24-44:6.

LLC, 484 F.3d 1046, 1055 (8th Cir. 2007).

"There are at least two ways [Deering] may demonstrate a material question of fact regarding pretext." Guimaraes v. SuperValu, Inc., 674 F.3d 962, 975 (8th Cir. 2012) (citation and internal quotation marks omitted). "She may show that [Lockheed Martin's] explanation is unworthy of credence because it has no basis in fact, or she may show pretext by persuading the court that discriminatory animus more likely motivated [Lockheed Martin]." Id. (citation omitted). "Either route amounts to showing that a prohibited reason, rather than [the] stated reason, actually motivated" the adverse actions. Id. (citation and internal quotation marks omitted).

Unlike Deering's retaliation claim, there is no evidence of pretext with respect to the alleged discriminator animus. As discussed, Lockheed Martin's explanation as to why Deering was not promoted to vice president is rational and worthy of credence, particularly in the absence of any facts to the contrary or that could even suggest racial bias. As a result, Deering's race discrimination claim fails as a matter of law and must be dismissed.

**CONCLUSION**

Accordingly, based on above, **IT IS HEREBY ORDERED** that:

1.   Defendant's motion for summary judgment [ECF No. 123] is granted in part as set forth above; and

2.   Plaintiff's motion for partial summary judgment [ECF No. 128] is denied.

Dated: August 30, 2022

s/David S. Doty
David S. Doty, Judge
United States District Court

23