# Exhibit G

assets to such entity. This letter agreement may also be assigned by the Company to a division or subsidiary entity that is owned or controlled by the Company.

This letter agreement may be executed electronically and/or in counterpart originals, each of which shall be deemed an original instrument for all purposes, but all of which shall constitute one and the same instrument.

If you wish to accept this offer, please sign and date this letter agreement, the enclosed Arbitration Agreement and the enclosed Employee Inventions and Proprietary Information Agreement and return them to me. As required by law, your employment with the Company is also contingent upon your providing legal proof of your identity and authorization to work in the United States. Additionally, your employment is contingent upon the successful completion of a background check and reference check(s) as determined by the Company in its sole discretion and your starting work with the Company on anticipated date of November 8, 2021.

This offer, if not accepted, will expire at the close of business on October 14, 2021.

If you have any questions regarding this offer, please contact Fred Landsman.

Very truly yours,

**ANAPLAN, INC.**

By: *Gil Lawson*

Name: Gil Lawson

Title: VP of Talent Acquisition

I have read and accept all of the terms of this letter agreement:

— DocuSigned by:

[Signature]

—28FAB3E74B1345B...

(Signature)

10/12/2021

Date

Anticipated Employment Commencement Date: November 8, 2021

GDSVF&H 5153552.1

PLAINTIFF'S EXHIBIT
P-46

5. **Company's Employee Inventions and Proprietary Information Agreement.** You are required, as a condition of your employment with the Company, to sign the Company's Employee Inventions and Proprietary Information Agreement, which is enclosed.

6. **Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. Any contrary representations which may have been made to you are superseded by this offer. This is the full and complete agreement between you and the Company on this term. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and a duly authorized officer of the Company.

7. **Outside Activities.** During your employment with the Company, you shall devote your full business efforts and time to the Company; however, you may serve on corporate, civic or charitable boards or committees, deliver lectures, fulfill speaking engagements, teach at educational institutions, or manage personal investments provided that such activities do not individually or in the aggregate interfere with the performance of your duties to the Company or create any actual or perceived conflict of interest with the Company. You shall comply with the Company's policies and rules, as they may be in effect from time to time during your employment with the Company.

8. **Arbitration.** As a condition of your employment, you agree to sign the Company's standard Arbitration Agreement, which is enclosed.

9. **Tax Matters.** All forms of compensation referred to in this letter agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law. Additionally, you are encouraged to obtain your own tax advice regarding your compensation from the Company. You agree that the Company does not have a duty to design its compensation policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company or its Board of Directors related to tax liabilities arising from your compensation.

10. **Entire Agreement.** This letter agreement, the Employee Inventions and Proprietary Information Agreement and the Arbitration Agreement supersede and replace any prior understandings or agreements, whether oral, written or implied, between you and the Company regarding the matters described herein. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company.

This letter agreement and all of your rights and obligations hereunder are personal to you and may not be transferred or assigned by you at any time. The Company may assign its rights under this letter agreement to any entity that assumes the Company's obligations hereunder in connection with a merger or acquisition or sale or transfer of all or a substantial portion of the Company's

GDSVF&H 5153552.1

cooperate in good faith with a governmental or internal investigation of the Company or its directors, officers or employees, if the Company has requested your cooperation.

3. **Bonus.** You will be eligible to be considered for an incentive bonus for each fiscal year with the Company. The bonus (if any) for a fiscal year will be awarded based upon achievement of the applicable corporate and/or personal objectives established by the Company for such year. Your target bonus will be equal to 27.5% of your annual base salary payable in United States Dollars. Any bonus for the fiscal year in which your employment begins will be prorated, based on the number of days you are employed by the Company during that fiscal year. Any bonus for a fiscal year will be paid within a commercially reasonable time after the close of that fiscal year, but only if you are still employed by the Company at the time of payment. The Company has discretion to change your target bonus amount, and the Company will provide you with notice of any such change. The determinations of the Company's Board of Directors or any duly authorized executive or committee with respect to your bonus will be final and binding.

4. **Restricted Stock Units.** Subject to the approval of the Company's Board of Directors, its Compensation Committee or either's authorized designee, you will be granted an award of Restricted Stock Units (the "RSUs") having a grant value of US$500,000.00 (the "Grant Value"), with the number of shares subject to the RSUs equal to the Grant Value divided by the average of the closing prices of the Company's common stock (as reported on the New York Stock Exchange or such other exchange on which the Company lists its shares of common stock) for a certain period of time as determined by the Company prior to the grant. Note the Grant Value is not a reflection or prediction of the value that the RSUs may ultimately convey to you. The RSUs will be granted under and subject to the terms and conditions of the Company's 2018 Equity Incentive Plan, as amended (the "Plan"), and a notice of restricted stock unit award and restricted stock unit agreement (collectively, the "RSU Award Agreement"). As will be more fully described in the RSU Award Agreement, the RSUs shall vest in installments as follows: (i) all of the Initial Installment RSUs shall vest if you remain in continuous service as an employee or consultant ("Service") through the Initial Installment Date and (ii) 1/12th of the Subsequent Installment RSUs shall vest on each of the next twelve successive Quarterly Installment Dates after the Initial Installment Date if you remain in continuous Service on each such Quarterly Installment Date.

The "Initial Installment RSUs" shall equal the product of one forty-eighth (1/48th) of the total number of shares subject to your RSUs multiplied by each full calendar month (i.e., the first day of a calendar month through the last day of such month) of continuous Service you complete beginning on your vesting commencement date (as set forth in the RSU Award Agreement) through the Initial Installment Date (and, for purposes of this determination, the month in which your vesting commencement date occurs shall be deemed a full calendar month of Service if such month is March, June, September or December and your vesting commencement date occurred during the first ten days of that month). The "Initial Installment Date" shall mean the first Quarterly Installment Date that occurs on or after you complete 12 months of continuous Service following your vesting commencement date. "Quarterly Installment Date" shall mean each March 10, June 10, September 10 and December 10, as applicable. "Subsequent Installment RSUs" shall equal the total number of shares subject to your RSUs minus the number of Initial Installment RSUs.

GDSVF&H 5153552.1

**/\naplan**

October 12, 2021

Daniel'la Deering
1809 Irving Avenue S
Minneapolis, MN 55403

Dear Daniel'la:

Anaplan, Inc. (the "Company") is pleased to offer you employment with the Company as described in this letter agreement.

1. **Starting Position.** You will start in a full-time, exempt position as Associate General Counsel, Commercial Americas and you will initially report to General Counsel - SVP, Legal. You will perform the duties and have the responsibilities customarily performed and held by an employee in your position or as otherwise may be assigned or delegated to you by the Company. By signing this letter agreement, you confirm with the Company that you are under no contractual or other legal obligations that would prohibit you from performing any of your job duties with the Company.

2. **Compensation and Employee Benefits.** You will be paid a starting annual salary at the rate of $260,000.00 per year payable on the Company's regular payroll dates. As a regular employee of the Company you will be eligible to participate in Company-sponsored benefits that will be described to you after the commencement of your employment with the Company.

**Sign-On.** You will receive a one-time sign-on bonus in the gross amount of $10,000.00. The Sign-On Bonus will be advanced to you on your first payroll. In the event you voluntarily terminate your employment with the Company for any reason or your employment with the Company is terminated for Cause, in each case prior to the completion of one year of employment with the Company (the "First Year"), within five days of your termination, you shall return to the Company one-twelfth (1/12th) of the Sign-On Bonus for each full month of employment with the Company that you do not complete during the First Year. In other words, the Sign-On Bonus is not earned until the completion of the First Year. Furthermore, you agree that to the extent legally permissible, Anaplan may deduct the prorated portion of the Sign-On Bonus owed by you from your final paycheck(s).

For purposes of this letter agreement, "Cause" means (a) your unauthorized use or disclosure of the Company's confidential information or trade secrets, which use or disclosure causes material harm to the Company, (b) your material breach of any agreement between you and the Company, (c) your material failure to comply with the Company's written policies or rules, (d) your conviction of, or your plea of "guilty" or "no contest" to, a felony under the laws of the United States or any State, (e) your gross negligence or willful misconduct or (f) your failure to

GDSVF&H 5153552.1