## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DANIEL'LA DEERING,<br><br>              Plaintiff,<br>v.<br><br>LOCKHEED MARTIN CORPORATION, et al.,<br><br>              Defendants. | Case No.: 0:20-cv-01534-DSD-ECW<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR THE SANCTION OF DISMISSAL WITH PREJUDICE** |

---

## I.      <u>INTRODUCTION</u>

This motion was filed for the purpose of disrupting a trial track that was inevitably headed in the wrong direction for Defendant. Its purpose is to disrupt, delay, malign, and intimidate. Retaliatory and scorched earth … right up until trial. Defendant wants to let everyone in the company know that if you speak up, if you stand up for yourself, if you file a lawsuit, they will do everything in their power to destroy you. This is the example they want to set. This is how they want their employees to perceive them.

This case has had its share of discovery issues.  Attorneys make mistakes in discovery all the time. But the perjury allegation is over the top. It is a personal attack designed to instill fear and draw this Court's attention away from the merits of the case.  It is an allegation based on contextually twisted facts that border on misrepresentation.

Twisting the Plaintiff's words, the defense takes three sentences from the Plaintiff's deposition out of context, and creates one new sentence to denigrate and disparage the

Plaintiff, and mislead this Court. This is wholly improper, and when viewed in a proper light, the Court will see this perjury allegation is not sustainable. It is a blended mix of mistake and confusion folded into a moment in time where the defense attorney cleverly leads the Plaintiff through a maze of questions on a subject broad in general terms and narrow in application while knowingly holding behind his back the documents that answer the questions. It was an astute litigators' move on the part of defense counsel – but it cannot carry the day to support the severest of sanctions. The Defense is fully aware of this, because they had the documents that speak to the Plaintiff's testimonial error in their possession when the error was made. They have literally known since the day of Plaintiff's deposition that she made a mistake, yet they waited until two weeks before trial to raise it with this Court – while feigning shock and indignance.

The discovery issues are a different story.  Plaintiff does not concede a rules violation; but admits mistakes were made. These mistakes were made by Plaintiff's attorneys. Ms. Deering provided responsive documents as requested.  Her attorneys, through what can best be described as a breakdown in communication during two separate transfers of lead counsel duties, triggering a series of blunders, failed to make sure the requested materials were actually disclosed. Counsel openly owns their mistakes. (*See* William Egan Declaration ("Egan Decl."); Heidi Fessler Declaration ("Fessler Decl."); Kaarin Nelson Schaffer Declaration ("Schaffer Decl.")) If the Court is inclined to issue a sanction of any kind, which it has the discretion to do or not do pursuant to Fed. R. Evid. 37, the sanction should levy against Plaintiff's attorneys, not the Plaintiff.

Defendants have brought an inflammatory and, frankly, retaliatory motion bearded behind twisted assertions of fact. The facts were offered to defense counsel during the Rule 37(a)(1) meeting. (*See* Schaffer Decl.) They chose to ignore them and move forward with this "emergency" motion related to mitigation so they could avoid trial on the merits. The Plaintiff asks this Court to take this motion seriously, to consider all of the evidence, and to make a fair ruling. In the end, Plaintiff is confident this Court will determine a jury should still hear and make the ultimate decision in this retaliation case … and so it should be.

In reviewing the motion and supporting documents, Plaintiff asks the Court to consider the impetus behind the motion. This motion sends a loud and clear message to any Lockheed Martin employee who is considering filing a charge with the EEOC, or a complaint in Federal Court.  If they stand to be heard, they will pay the price.  They will be personally attacked, punished, and called a liar. One doesn't have to look far in this case to see how effective it is. The three non-executive level employees deposed in this case have expressed – under oath – a fear that they will be targeted by Lockheed Martin in response to their cooperation and honesty in testimony. *See* Exs. D, E, and F to Declaration of William Egan ("Egan Decl.").

The allegations made by Lockheed Martin in this motion do not amount to perjury, but there have been mistakes made in respect to disclosure of relevant documents. These documents are not relevant to liability, but solely to mitigation of damages. Under these facts, a sanction of dismissal is not warranted. The Defendant should not be permitted to engage in its own version of parlor games, hold evidence for an opportune time, throw the

flag and ask for a red card so it can avoid a jury trial. This flies squarely in the face of the foundations of our system of justice.

The motion should be denied.

## II.    ISSUE STATEMENT

**Question Presented:**  Should the Court dismiss this case based upon misstatements of the Plaintiff in her deposition and/or delayed supplementation of wage loss mitigation information?

**Short Answer:** No.

Before a Court can dismiss a case, or enter a default judgment, as a sanction under its inherent powers it must find that there is clear and convincing evidence of bad faith conduct. *Ascentium Capital LLC v. Littell*, No. 2:20-cv-4215-NKL, 2021 WL 6095550 (W.D. Mo. Dec. 22, 2021) (citing *Martin v. DaimlerChrysler Corp*, 251 F.3d 691, 694-95 (8th Cir. 2001) (found the Eighth Circuit implicitly adopted this approach). Eighth Circuit courts have made it clear that perjury must be proven definitively before a Court can exercise its inherent authority to levy sanctions that preclude the jury from reaching its own conclusion as to the testimony. *Mgmt. Registry, Inc. v, A.W. Co.*, 2022 WL 4466071 at *15 No. 17-5009 (JRT/DTS) (D. Minn. Sep. 26, 2022) *citing Baycol Steering Comm. v. Bayer Corp.,* 419 F.3d 794, 804-805 (8th Cir. 2005); *Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992). "Perjury occurs when a witness gives false testimony concerning a material matter with the willful intent to provide false testimony." *Mgmt. Registry, Inc. v. A.W. Co.*, 2022 WL 4466071, at *13-16 *citing United States v. Waters*, 799 F.3d 964, 974 (8th Cir. 2015).  The facts here do not support a finding of bad faith conduct – as to the alleged perjury, delayed discovery, or otherwise.

4

The discovery issue is resolved. The mitigation material related to Plaintiff's current employer – Anaplan – has been disclosed, along with a summary of damages put together by Plaintiff's consulting expert (work product). *See* Ex. H to Egan Decl. The disclosure reduces Plaintiff's damages – favoring the Defendant. The continuance of the trial date cures any prejudice. The disorganization and miscommunications between Plaintiff's attorneys were understandable under the circumstances. There was no bad faith. This Court cannot find, on this record, clear and convincing evidence that the Plaintiff acted in bad faith. Nor should the Court consider lesser sanctions as punishment under its inherent power where the Defendants requested ONLY dismissal, and failed to properly bring the issue before the Court under Rule 37. The motion should be denied and a new trial date set.

Before we move into responsive facts, Plaintiff's counsel gives notice that the Plaintiff received notice on June 21, 2023, that she is being terminated by Anaplan in a formal reduction in force. This new employment change requires additional disclosures, and changes to damages dynamic in the case.

In an effort to assure that all documents which may have any relevance to the damages issue have now been produced, Plaintiff is making an additional production of documents that includes the documents that Plaintiff's consulting expert used to rerun the damage calculations, and the documents Plaintiff just received from Anaplan.

Plaintiff anticipates this latest disclosure will be met by the defense with objection and scorn. Which is precisely why Plaintiff made the disclosure – the table is cleared. They can pound on it all they want. In fact, Plaintiff goes even further – offering the Defendant

an opportunity to depose Plaintiff's consulting expert, Erick West (unheard of in civil litigation), as well as an opportunity to interview or depose the Plaintiff on the issues they assert are elements of some sort of pre-trial ambush tact.

Moving along into the facts of this motion.

### III.   FACTUAL BACKGROUND

On November 1, 2021, Dani Deering was deposed by Michael Burkhardt, current attorney for Defendant Lockheed Martin. (*See* Egan Decl. Ex. B.) The deposition was conducted via Zoom. (*Id;* Ex. C) (video clip from Deering Deposition)). Approximately three hours into her deposition, after the lunch break, Mr. Burkhardt began grilling Ms. Deering on her post-termination job search history. (*Id*.; Ex. B. 153:3). As he was inquiring, he was scrolling through a document shared via Zoom screen. (*Id*.; Ex. H). Ms. Deering did not have the documents in front of her. *Id*. As Mr. Burkhardt scrolled through a list of jobs Ms. Deering had applied for and he inquired about whether she had applied for any other jobs beyond what was in the document on the screen. *Id*. (See Ex. B; 153:23 – 154:03) Ms. Deering inferred that she was unsure, that she may have applied for more jobs, and acknowledged – twice – that her discovery responses needed to be updated relative to her job search efforts. (*See* Egan Decl. Exs. B & C) (Deering Dep. 162:6; 162:24) We know now that Ms. Deering did not need to supplement that particular discovery, because Mr. Burkhardt already had it – he just wasn't showing it to her. (Egan Decl. ¶39) He knew the answer to the question; and when Ms. Deering gave him a contradictory answer, he made the choice not to challenge her response, or correct it with the documents. Had he done that on November 1, 2021, we wouldn't be here arguing this issue now.

Plaintiff's discovery disclosures began on December 23, 2020, and have continued when necessary pursuant to Fed. R. Civ. Pro. 26(e). (Egan Decl.) For convenience of the court, a spreadsheet setting forth Plaintiff's disclosures and dates of disclosure is attached as Egan Decl. Exhibit A. Notable in this circumstance is the fact that despite Ms. Deering's responses in her deposition indicating her discovery responses were not up to date, the defense did nothing to push the issue during discovery. (Egan Decl., §12) No deficiency letter, no motion to compel, no phone calls to counsel. Then, on June 9th, 2023, when it discovered, through a late supplement from Plaintiff's counsel, that it did not have Ms. Deering's current employer information, which impacts mitigation calculations, Defendant notified Plaintiff's counsel of its intent to bring a motion for sanctions. (Schaffer Decl.)

The questions, factually, become: (1) when did the defense have information in its possession that should have triggered a request for further information on the issue? And, (2) when did the Plaintiff discover this information had not been disclosed, and what caused the nondisclosure?

Ms. Deering kept her disclosures current throughout litigation. *See* Ex. A to Egan Decl. If her attorneys asked for something, they got it. *Id*. If relevant circumstances in her life changed, she provided this information to her attorneys. *Id*. But not all of those documents were being provided to Defendant. Why? Good question … the simplest explanation is that the disclosure missteps resulted from a series of unexpected events. First, she lost her lead litigator as a result of license suspension[1]. (Egan Decl. §§16, 19)

---

[1] Something neither she, nor co-counsel were aware of until it actually happened.

Second, the document review database that had been used by her two other lawyers had been taken down by the lead litigator (*see* Fessler Decl. §§16-18) and all of her files and updated information under management of the now-suspended attorney were not available. (Fessler Decl. §16) Regardless, both of her other lawyers believed that the suspended lead attorney had made all of the disclosures. (Egan Decl. §§12, 15) They believed this in part because they knew that the suspended attorney had continued to produce documents to the Defendant. (Fessler Decl. §§9-11) This assumption was incorrect.

When it was discovered that certain documents relevant to mitigation of damages had not been disclosed, Ms. Deering's attorneys set into motion a discovery supplementation. (Egan Decl. §§27-29; Fessler Decl. §§19-23) At this point, the documents were being uploaded into a document review software program called Casepoint. (Egan Decl. §28) The newest member of the team – who replaced the suspended attorney as the lead litigator – had never used the software, and neither had her staff. (Schaffer Decl.) After receiving an initial training in how to use the Casepoint software, the new lead litigator's paralegal loaded the supplemental documents to the software. (Fessler Decl. §§21-27) After the supplemental documents were redacted to remove any personally identifiable information, the paralegal provided the information required by Casepoint to prepare the documents to be produced. (Fessler Decl. §§28-31) The last step in the process required actually forwarding the link to the downloaded files to the Defense. (Egan Decl. §28) (Fessler Decl. §§30-35) The paralegal handling the supplement was unfamiliar with this last step in the process. (Fessler Decl. §§31-33) As a result, the paralegal – and Egan and Fessler – thought she had completed the supplemental disclosure on December 1, 2022,

but she had not. *Id.*; Egan Decl. 28. The documents were not actually produced to the defense – electronically or otherwise. *Id.*

This mistake was discovered shortly after Plaintiff's counsel received a call from counsel for Defendant. (Schaffer Decl.) Ms. Deering's attorneys then took the extra step of retaining a consulting forensic economist to gather the information necessary to determine past and future damages and wage loss. *See* Egan Decl. §§33-34 & Ex. G.  The calculations using the recently disclosed information on Ms. Deering's current job with Anaplan showed a $700,000.00 change in economic loss value in the Defendant's favor. *Id.* With the defense threatening sanctions and screaming about late disclosures, Plaintiff's counsel went ahead and produced the consulting expert's financial loss figures to assist the defense in preparing for trial (and is producing additional supplemental mitigation documentation).

Finally, Plaintiff's counsel offered to stipulate to a continuance if the defense wanted more time to prepare arguments on the figures which now showed Ms. Deering's economic loss damages were actually $700,000.00 less than what they had anticipated. (Schaffer Decl.)  They declined the offer … twice.  Why?  Because they were waiting to ambush the Plaintiff right before trial if the case did not resolve – and now use this motion to attack Plaintiff personally and paint her as a liar just before trial.

Defendant laid in wait until two weeks before trial to spring this motion on the Court. Interestingly, this "lie in wait" tactical approach is the same method applied by Lockheed Martin and its lawyers in the process of terminating the Plaintiff from her employment. The Court will recall discussing this in its August 30, 2022 ruling - the question of whether Lockheed Martin had lured Ms. Deering into filing her complaint with

9

the EEOC so that it could terminate her? (Doc. 164 at 17) Now, in a classic post-termination retaliation move, Lockheed Martin focuses on destroying the Plaintiff personally, to send a message to all that are watching. This, in the face of the fact that they have already been told by Ms. Deering's lawyers that it was counsel who made the mistakes that led to the delayed disclosure. (Schaffer Decl.)

This should not be a motion to dismiss. At best, it is a motion for terms under Rule 37; and any prejudice existing from the delayed disclosures has been cured by the trial continuance.

Defendants knew all along that Plaintiff had mitigated. They knew she had applied for numerous jobs; they knew she was employed; and they knew she needed to supplement her discovery responses with respect to this limited issue, which goes to mitigation, not liability. What none of the attorneys on either side knew until Friday, June 9, 2023, was that Defendant had not been provided a copy of Plaintiff's current job offer and pay stubs that would have shown the change in her mitigation, or damage calculation – changes that favored the Defendant. In this regard, Ms. Deering and her attorneys believed discovery had been properly supplemented in December 2022. (Egan Decl. §29; Fessler Decl. §§32-35)  Plaintiff's counsel learned for the first time during a call with defense counsel on June 9th, 2023, that the documents related to Plaintiff's current employer – Anaplan – had not been produced. (Schaffer Decl.) In light of the errors made in completion of the production process for the supplemental information, Plaintiff's counsel reverse engineered the process to determine what happened. The following is a summary of the relevant events that caused the delay:

- Attorneys for Plaintiff were aware that the former lead trial attorney knew that Plaintiff had a new job at Anaplan. *See* Ex. A to Egan Decl. (Fessler Decl. §13)

- As of November 2021, Attorneys Egan and Fessler believed Attorney Halunen was responsible for updating Plaintiff's written discovery and believed discovery was updated. (Egan Decl. §12;Fessler Decl. §§6-9, 11)

- On November 1, 2021, Defendant knew Plaintiff's discovery needed to be updated and did not bring a motion to compel. (Egan Decl. Ex. B)

- In a confidential settlement letter to the Court dated November 3, 2022, Attorney Egan unintentionally miscalculated Plaintiff's wage loss damages. (Egan Decl. §§ 21-26)

- On December 1, Attorney Fessler, assisted by Attorney Egan and a paralegal tried to – and believed she did – produce evidence of Plaintiff's job offer from Anaplan and certain pay stubs from 2022. (Fessler Decl. §§19-34)

- On May 25, 2022, Attorney Nelson Schaffer, relying on a miscalculation from Attorney Egan, sent an incorrect wage loss damage calculation to Defendant. (Egan Decl. § 30-31; Schaffer Decl.)

- On June 9, 2023, upon learning of their mistakes, counsel for Plaintiff immediately attempted to remedy them and offered Defendant a continuance to cure any potential prejudice. (Schaffer Decl.)

- June 12, 2023, Plaintiff's counsel had a meet and confer with Defense counsel regarding this motion. *Id.*

- June 12, 2023, Defendant filed this motion. (Doc. 221)

It is indisputable that the only issue here is the evidence relevant to Plaintiff's current position – which began on November 8, 2021. This mitigation material does not have anything to do with liability. The discovery delay was not intentional, and the facts support a finding that it is excusable delay. The evidence supplemented is FAVORABLE to the defense. The evidence is important for both sides of the case – but there is no prejudice in the delay because ample time exists for both parties to adjust their damages exhibits and examination. Applying these facts to a Rule 37(c) analysis there can be but one conclusion – the motion to dismiss must be denied; and if the Court does feel that sanctions are warranted, those sanctions should be levied against counsel, not Ms. Deering.

## IV.   AUTHORITY / ARGUMENT

The discovery process often involves missteps. Despite mistakes, "there is a strong policy favoring a trial on the merits and against depriving a party of [her] day in court." *Baker v. General Motors Corp.,* 86 F.3d 811, 817 (8th Cir. 1996) (rev'd on other grounds) (*quoting Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 996 (8th Cir. 1975)). This policy rests upon the recognition "that the opportunity to be heard is a litigant's 'most precious right and should be sparingly denied.'" *Id.* (*quoting Edgar v. Slaughter,* 548 F.2d 770, 773 (8th Cir. 1977)) Here, the delayed disclosures the defense complains about are specific to mitigation of damages. Plaintiff has attempted to cure the discovery errors at issue. The Defendant has all the information they need to present their mitigation defense.

The case has been continued, which allows the defense plenty of time to prepare to take advantage of the $700,000.00 benefit the late disclosure affords them. Because there has been no prejudice, there should be no sanction. Plaintiff asks this Court to allow this case to proceed to trial on the merits.

Absent Defendant's perverse allegations of perjury, this would be a simple Rule 37(c) motion for sanctions – which is essentially a second bite at the apple consistent with Defendant's Motion In Limine to Preclude Certain Damages Evidence (Doc. 205). Because all of the cases cited by Defendant in this motion include an allegation of perjury, Plaintiff will address the allegation of perjury first, and then address concerns about discovery violations.

A.   **THE COURT'S INHERENT POWER TO DISMISS A CASE REQUIRES CLEAR AND CONVINCING EVIDENCE OF BAD FAITH CONDUCT. THE FACTS HERE DO NOT SUPPORT A SANCTION UNDER THE COURT'S INHERENT AUTHORITY, LET ALONE THE MOST SEVERE OF SANCTIONS.**

It is well settled that inherent authority is a broad and powerful tool that should be used sparingly. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.") Generally, before invoking its inherent authority, a court should first turn to specific rules tailored for the situation at hand, such as Rule 37, to justify sanctions. *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 898-900 (8th Cir. 2009). Then, as an alternative basis for support or in circumstances where specific rules are insufficient, *i.e.*, when "there [is] a need," it may be appropriate to invoke their inherent authority. *Societe Internationale v. Rogers*, 357 U.S. 197, 207, 78 S. Ct.

1087, 2 L. Ed. 2d 1255 (1958) (reversing a sanction of dismissal for failure to satisfy the requirements of Rule 37); see also *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 n.14 ("[P]rior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct," but "because individual rules address specific problems, in many instances it might be improper to invoke one when another directly applies.") It follows from this general rule that the best practice is to keep the structured analysis for a particular rule separate from the relatively unstructured analysis associated with inherent authority. *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 898-900 (8th Cir. 2009).

Defendant here has moved to dismiss the case or limit Plaintiff's available remedies under the Court's inherent authority.  Other than a footnote, they did not even discuss Rule 37. (ECF No. 221 p.11 *n.* 12)  Before a Court can dismiss a case, or enter a default judgment, as a sanction under its inherent powers it must find that there is clear and convincing evidence of bad faith conduct. *Ascentium Capital LLC v. Littell*, (2021 WL 6095550 at *2) (*citing Martin v. DaimlerChrysler Corp*, 251 F.3d 691, 694-95 (8th Cir. 2001)). The Defendant has not made a showing by clear and convincing evidence that bad faith occurred; and most certainly has not and cannot show by clear and convincing evidence that Ms. Deering perjured herself in her deposition. The motion should be denied.

1.   **THE COURT'S INHERENT POWER TO SANCTION IS NOT TRIGGERED WHERE THE SANCTION BEING SOUGHT IS DISMISSAL AND THE EVIDENCE DOES NOT SUPPORT A FINDING OF BAD FAITH.**

The key to unlocking the Court's inherent authority to sanction a party by dismissal, is a finding of bad faith. *Ascentium Capital LLC v. Littell*, (2021 WL 6095550 at \*4-5) (before a Court can dismiss a case, or enter a default judgment, as a sanction under its inherent powers it must find that there is clear and convincing evidence of bad faith conduct.) In *Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1472, 314 U.S. App. D.C. 137 (D.C. Cir. 1995), the D.C. Circuit held that for a court to use its inherent powers to dismiss a case, or enter a default judgment, the Court must find by clear and convincing evidence that the offended party acted in bad faith and that lesser sanctions were not sufficient punishment. In *Martin v. DaimlerChrysler Corp*, the Eighth Circuit implicitly adopted this approach. 251 F.3d 691, 694-95 (8th Cir. 2001) (stating the district court made the "required findings" laid out in *Shepherd*). Further, it has been recognized that the evidentiary standard the Court should apply in deciding bad faith is by clear and convincing evidence; moreover, it is not clear "that false statements, standing alone, provide a sufficient basis for the imposition of sanctions pursuant to the Court's inherent authority." *Barash v. Kates*, 585 F. Supp. 2d 1347, 1366 (S.D. Fla. 2006) (citation omitted).

Defendant alleges, and Plaintiff denies, that Plaintiff intentionally lied in her deposition for the purpose of misleading the defendant about a new job, which goes to damages, not liability. So, not for the material issue of Defendant's liability for the

retaliatory discharge of the Plaintiff, but rather, how much it is going to cost them for the unlawful discharge. Defendant packages the delayed supplementation with the allegation of perjury based upon three sentences in a deposition and tries to convince this Court that this is some sort of conspiracy to defraud the court and defile the justice system as a whole. It is not a conspiracy, it is a cumulation of errors made by lawyers, on top of two misstatements made by a confused Plaintiff in a deposition who was confronted with a fragment of the actual information that had been disclosed.

The evidence is not such that this Court can find clear and convincing evidence that the Plaintiff committed perjury or acted in bad faith in respect to the delayed discovery. Dismissal is not an appropriate sanction - nor should the Court consider lesser sanctions as punishment under its inherent power where the Defendants requested ONLY dismissal, and failed to properly bring the issue before the Court under Rule 37. The motion should be denied.

**2.    THE FACTS HERE DO NOT SUPPORT A FINDING OF PERJURY WHERE THE DEFENDANT HAS NOT PUT FORTH SUFFICIENT FACTS TO PROVE DEFINITIVELY THAT THE TESTIMONY OF MS. DEERING WAS FALSE, CONCERNED A MATERIAL MATTER, AND WAS MADE WITH THE WILLFUL INTENT TO PROVIDE FALSE TESTIMONY.**

Perjury is a serious allegation that Defendant throws around cavalierly. It's not as simple as accusing someone of lying and pounding your fist on the table to emphasize the allegation. "Perjury occurs when a witness gives false testimony concerning a material matter with the willful intent to provide false testimony." *Mgmt. Registry, Inc. v. A.W. Co.*, 2022 WL 4466071, at *13-16 (citing *United States v. Waters*, 799 F.3d 964, 974 (8th Cir.

2015) (internal quotation marks omitted)). When a witness commits perjury within the context of a civil case, courts have inherent authority to levy sanctions necessary to avert or correct a judgment based upon such fraudulent testimony. *Mgmt. Registry, Inc. v. A.W. Co.*, 2022 WL 4466071 at*14 (*citing Cf. Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d at 802, 804) (discussing courts" inherent power to impose sanctions to manage their cases and defining "perjury")). The test applied by the Court to determine if perjury has been committed follows the federal perjury statute. *Mgmt. Registry, Inc. at *14,* "'A witness testifying under oath or affirmation violates [the federal perjury statute] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Id. citing Baycol Steering Comm.*, 419 F.3d at 804 (quoting *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993)) (alteration in original). See also, Minn. Stat. § 609.48, subd. 3 (stating that perjury is shown in part where "the declarant has made two inconsistent statements under such circumstances that one or the other must be false").

Showing that a witness's statement may not have been entirely consistent is not sufficient to show perjury. *United States v. Nelson*, 970 F.2d 439, 443 (8th Cir. 1992). Moreover, it is not clear "that false statements, standing alone, provide a sufficient basis for the imposition of sanctions pursuant to the Court's inherent authority." *Barash*, 585 F. Supp. 2d at 1366 (citation omitted). Regardless, Eighth Circuit courts have made it clear that, **perjury must be proven definitively before a Court can exercise its inherent authority to levy sanctions that preclude the jury from reaching its own conclusion as**

**to the testimony**. *Mgmt. Registry, Inc.*, 2022 WL 4466071 at *15 (*citing Baycol Steering Comm.,* 419 F.3d at 804-805; *Pope.*, 974 F.2d at 984 (Emphasis added)).

Here, the Defendant has not shown, and the Court cannot determine with certainty, that the Plaintiff intentionally and willfully lied in her deposition when she was asked about her job search efforts. The testimony standing alone does not rise to the level required for the Court to find that perjury occurred. Nor does the late production offer the defendant any help in proving that perjury occurred. Therefore, the Court should deny Defendant's motion to sanction the Plaintiff under a theory of misconduct based upon perjury. *See* e.g., *Mgmt. Registry, Inc.*, 2022 WL 4466071 (denying motion for terms where perjury could not be established with certainty and failure to disclose relevant documents may not have been malicious or intentional.) It cannot be said that the plaintiff committed perjury where, in a deposition, defense counsel used an exhibit and remote circumstances to confuse the Plaintiff while withholding documents he knew would correct any misstatement made by the Plaintiff at the time.

The Plaintiff did make a misstatement in her deposition. But it did not transpire as the defense suggests. She was trying to respond to a confusing line of questioning while an exhibit that she did not have a hard copy of in front of her, rolled across the screen. (Egan Decl. Exs. B & C) When asked about her job search efforts, she tells counsel she will have to look into the issue and supplement her disclosures. *Id*. Why?  Because the exhibit she was being shown was a fragment of her disclosures on the mitigation issue – not the entire disclosure. Defense counsel intentionally misled her. When she answered incorrectly from a confused state of mind, effectively falling into the trap set, defense counsel smartly

moved on. He did not show her the records that would help her to understand his question and clear up her confusion. He did not correct her and use the record to refresh her recollection – because he didn't want to give her the opportunity to correct her statement. He wanted to preserve this little pearl until it was most beneficial to bring it forward and call her a liar. Also, the Anaplan application, which is the application Defendant claims Plaintiff failed to disclose, was identified on the document before Plaintiff. *Id*. She applied for that job back in 2019 and it was disclosed. *Id*.

The Defendant – in an effort to twist Plaintiff's words – takes three different sentences out of context and creates one new sentence to mislead this Court. (Doc. 221 at 3) An accurate reflection of the record is necessary.

Plaintiff's deposition was taken remotely. Plaintiff was being questioned about an exhibit that included a list of over 80 jobs she had applied for. *See* Ex. G to Egan Decl. While she was answering Defendant's questions, she did not have a hard copy of the document in front of her. (Egan Dec. Ex. C) As Defendant (not Plaintiff) scrolled through the document on a computer screen, Plaintiff attempted to answer the following questions:

> Q: … Are there any efforts beyond December of 2020 that you've made to secure other employment that are not in this document?
> A: Not that I'm aware of. It's exhausting and disheartening to keep applying for jobs and not getting anything."
> Q: Right. Is that the reason why you haven't applied for any positions after December 2020?
> A: I don't know if I – I'll need to update that if I have. I'll have to check. I may have submitted a couple applications, but not many. I didn't start my job with nVent until February 2021, so we'll need to update that.
> Q: Have you applied – have you looked for any alternative employment while you've been working for nVent?
> A: No.
> Q: So you may have applied to a few jobs between the end of December and

February of 2021, but you haven't done any since. Is that correct?

A: That's correct.

Q: Okay. I'm scrolling through here, and I'm doing it fast but just trying look for nVent on here. Is that something you applied online –

A: Yes.

Q: -- to or –

A: Umhum. Yes. That – we'll need to update that.

Q: Okay. So you applied to nVent at some point after December of 2020?

A: Yes.

Q: Okay. Let me just go back to the date. The last entry is December 10th, so some point after December 10th of 2020 you applied to nVent?

A: Yes.

Q: And what's – and again, I'm sorry, what's the title of the position that you hold?

A: Associate General Counsel Director.

Q: Do you have a rough idea of when you applied? Did you apply in December?

A: I have no idea when I applied. It was – it was obviously – since its not here, then it was after that time.

(Egan Decl. Ex B; Deering Depo: 161:23-163:14)

Plaintiff said that it is "so exhausting and disheartening to keep applying for jobs and not getting anything." (Deering Depo. 162:2) This is a true statement. At the time she made this statement, Plaintiff had applied for over 80 jobs, which *was* exhausting and disheartening. That she had a job and had finally received another job offer does not change this fact. Then, she was attempting to respond to a line of questioning about a document that defense counsel was moving and controlling online while he asked her questions about it – Plaintiff did not have a hard copy of that document in front of her. The document was a list of over 80 jobs Plaintiff had applied for. (Egan Decl. Ex. G) While defense counsel scrolled through the document, he asked Plaintiff questions about date ranges when she did and did not apply for jobs. (Egan Decl. Ex. G) He asked Plaintiff if she looked for "alternative employment" without telling her what "alternative employment" meant. (Egan

Decl. Ex. B; Deering Depo. 162:11) Then he asked if Plaintiff looked for jobs during a certain window of time. (Egan Decl. Ex. B 162:15-18).) With the document being used by the defense posted on the screen, counsel's questions were misleading and confusing. Plaintiff was confused and struggled with her memory of what had transpired and when. In this state of mind, she provided an inaccurate answer, saying she had not applied for more positions when she actually had. (Egan Decl. Ex. B; Deering Depo. 162:15-18) Plaintiff's answer was a mistake. Defense counsel knew this was an inaccurate answer because Plaintiff *had already produced* documents showing that she had applied for positions during the date range when she said she had not. (Egan Decl. Ex. G) After this inaccurate response, Plaintiff confirms her confusion, stating that she needed to update her discovery (*Id*. 162:24; "we'll need to update that.).

That is not perjury – not even close. Instead, it is an inconsistent statement that Defendant may choose to confront Plaintiff with at trial consistent with Federal Rule of Evidence 613. Frankly, when uncloaked, this testimony misstatement doesn't even make for good impeachment.  Regardless, this testimony does not amount to perjury. The appropriate outcome is for the jury to weigh the evidence. If the Defendant wants to impeach the Plaintiff with her own testimony, they are free to do so.  The ultimate decision as to credibility should be left to the jury. *Pinto v. Pierce*, 389 U.S. 31, 33-34, 88 S. Ct. 192, 194, 19 L.Ed.2d 31, 34 (1967); *United States v. Barajas*, 474 F.3d 1023, 1026 (8th Cir. 2007) ("[W]e do not review questions involving the credibility of witnesses but leave credibility questions to the jury.")

21

**B.   DEFENDANT HAS NOT SUFFICIENTLY ESTABLISHED CLEAR AND CONVINCING EVIDENCE OF BAD FAITH CONDUCT TO SUPPORT DISMISSAL ON THE ISSUE OF THE DELAY IN DISCLOSING THE MOST CURRENT WAGE LOSS MITIGATION INFORMATION. THEREFORE, DISMISSAL IS NOT APPROPRIATE AS A SANCTION UNDER THE COURT'S INHERENT POWER.**

Defendant seeks a sanction of dismissal under the Court's inherent power. As indicated above, this requires the Court to make findings that clear and convincing evidence of bad faith exists to support the extreme sanction of dismissal. *Ascentium Capital LLC,* 2021 WL 6095550 at *4-5, citing *Martin*, 251 F.3d at 694-95. At best, these facts support a finding that Plaintiff's counsel should have been more attentive during and after the deposition.  This cannot support a dismissal sanction under the Court's inherent power. There is no need to belabor this point – there are no acts here to suggest the Plaintiff's attorneys' mistakes were intentional or grounded in bad faith.  The motion should be denied.

**C.   THE DEFENDANT HAS NOT ASKED FOR TERMS UNDER RULE 37. HOWEVER, IF THEY HAD – OR DO SO IN REPLY – OR SHOULD THE COURT CONSIDER THIS SUA SPONTE, DISMISSAL IS NO LESS IMPROPER UNDER RULE 37.**

Before resorting to its inherent authority, "courts first should turn to specific rules tailored for the situation at hand, such as Rule 37, to justify sanctions." *Management Registry, Inc.*, 2022 WL 4466071 *quoting Sentis Grp., Inc. v. Shell Oil Co*, 559 F.3d 888, 900 (8th Cir. 2009).  Rule 37 provides for sanctions where a party fails to provide information as required by Rule 26, even without a court order. Fed. R. Civ. P. 37(c)(1); *In re Polaroid Corp.*, No. 08-46617, 2017 WL 1183983, at *7 (D. Minn. Mar. 29, 2017) (*quoting Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07

(2d Cir. 2002)). Because dismissal is an extreme result, it may "be considered as a sanction only if there is: (1) an order compelling discovery; (2) a willful violation of that order; and (3) prejudice to the other party." *Keefer v. Provident Life and Acc. Ins. Co.,* 238 F.3d 937, 940 (8th Cir.2000) (*citing Schoffstall v. Henderson,* 223 F.3d 818, 823 (8th Cir.2000)). Here, Defendant did not bring a motion to compel discovery (despite knowing discovery had not been supplemented), so there is no order compelling discovery and dismissal is improper.

Sanctions should not be lightly imposed but are important tools to "penalize those whose conduct may be deemed to warrant such a sanction" as well as "to deter those who might be tempted to such conduct in the absence of such a deterrent." *Universal Coops., Inc. v. Tribal Co-op. Mktg. Dev. Fed'n of India, Ltd.*, 45 F.3d 1194, 1196 (8th Cir. 1995) (*quoting Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)).

The district court's discretion narrows as the severity of the sanction or remedy it elects increases. *See Heartland Bank v. Heartland Home Fin., Inc.,* 335 F.3d 810, 817 (8th Cir.2003) (where exclusion of evidence was tantamount to dismissal of claims, the district court should have considered lesser sanctions); *Laclede Gas Co. v. G.W. Warnecke Corp.,* 604 F.2d 561, 565–66 (8th Cir.1979) (drastic sanctions, such as dismissal, require a finding of willfulness, bad faith, or fault on the part of the noncompliant party).

Here, there was no violation of a discovery order, there was no motion to compel, there was no bad faith, there is no prejudice – disclosures related to Plaintiff's job at Anaplan have been made and the defense benefits from those disclosures, and no sanction is necessary. Plaintiff's attorneys made a mistake regarding in believing information

23

regarding Plaintiff's job at Anaplan had already been provided by former suspended lead counsel and, upon learning of the mistakes, cured them. But if the Court is inclined to issue a sanction, it should be levied on the attorneys.

D. **PLAINTIFF'S ATTORNEYS DID MAKE MISTAKES IN THE DISCOVERY PROCESS BUT THESE MISTAKES DO NOT RISE TO THE LEVEL OF SANCTIONABLE CONDUCT – ESPECIALLY WHERE THE SANCTION SOUGHT IS DIMISSAL.**

If a party fails to timely disclose information contemplated by Rules 26(a) and (e), the Court may choose to sanction the culpable party. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The sanctions available include exclusion of the information or testimony **unless the party's failure to comply is substantially justified or harmless**. *See Id.* at 692; Fed. R. Civ. P. 37(c)(1) (emphasis added). It is important to note that the Eighth Circuit has cautioned that the "[e]xclusion of evidence is a harsh penalty and should be used sparingly." *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995); *see also Wegener*, 527 F.3d at 692 ("[A] district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case" but that "discretion narrows as the severity of the sanction or remedy it elects increases."); *Heartland Bank*, 335 F.3d at 817 ([w]here exclusion of evidence is akin to a dismissal of a claim, the court should consider "the possibility of lesser sanctions," such as a continuance, monetary sanctions, or partial exclusion).

Here, the delay in disclosure was inadvertent, resulting from unforeseen circumstances that began with the suspension of Ms. Deering's lead counsel, and continued through communication breakdown and technology issues – but ultimately leading to

supplementation of the information at issue.  Under the circumstances, it cannot be said the delay in discovery was not substantially justified. Regardless, as shown above, the delay in disclosures was harmless. In fact, the disclosure actually benefited the Defendant. Under these circumstances sanctions are not proper under Rule 37(c). *Wegener*, 527 F.3d at 692.

If the Court does decide the Rule 37(c) analysis should be applied, the court must consider (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). The 8th Circuit has interpreted and applied the test as "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (8th Cir. 2008). Applying this analytical framework to the facts here leaves no question that the remedies the defendant seeks are well beyond relative reason.

### 1.    The Reason The Materials Were Not Disclosed Was Inadvertent Error On The Part Of Plaintiff's Counsel – This Does Not Justify Sanctions.

Ms. Deering provided documents related to her employment with Anaplan to her lawyers. (Fessler Decl. §13) Through the process of the suspension of her lead attorney, transition of Ms. Deering's file between firms, changes in case management software being used, and communication breakdowns, the discovery tracking responsibility somehow

slipped through the cracks. (Egan Decl.)(Fessler Decl. §§7-9, 11) Plaintiff's attorneys believed the evidence of Ms. Deering's post-termination employment history – including the disclosures regarding her current employment with Anaplan that is at issue here – had been disclosed. (Fessler Decl. §§11, 13) It was eventually discovered that no one had disclosed the information.  No one intended to hide the information regarding employment with Anaplan from the defense – it was an inadvertent error. *Id*. When Plaintiff's counsel discovered the information had not been disclosed in November 2022, they immediately began the process to produce the information. (Fessler Decl. §§18-20)

Plaintiff retained a consulting forensic economist to review the economic loss materials and do a damages assessment. That assessment shows the disclosure of the Anaplan employment information reduced Plaintiff's economic loss numbers by approximately $700,000.00. When the defense pushed back on the late disclosure issue, Plaintiff disclosed the summary prepared as work product by the consulting expert showing them the Plaintiff's discovery of their disclosure management blunders resulted in a windfall for the Defendant. Defendant's response was to file the present motion.

### 2. Surprise is not an issue, and any alleged prejudice was cured when this Court ordered the trial continuance.

Well before this motion was filed, the defense was aware that Plaintiff had inaccurately answered a question in her deposition, and had not supplemented discovery. They strategically chose not to confront Plaintiff on these discovery issues, likely choosing to lay in wait and use this information to attack the Plaintiff at trial. Tactically, this is a perfectly fine idea – but with that choice, Defendant cannot now claim surprise. Regardless,

the continuance cures any issue of prejudice that may have arisen had this actually been a surprise.

Plaintiff would like this Court to note that before this motion was filed, Plaintiff offered to stipulate to a continuance to allow the Defendant more time to review the materials and incorporate them into their defense if they felt additional time was necessary. (Schaffer Decl.) Plaintiff also suggested that both parties hire a damages expert to address economic loss and mitigation. (*Id*.) The Defendant did not want a continuance and did not respond to the expert offer. (*Id*.) These facts are important because it shows the Court that the Defendant does not really care about any assumed prejudice resulting from any delay in disclosure. The reason they don't care is because there is no prejudice. The delayed disclosures actually benefit the defendant – to the tune of a $700,000.00 savings on future economic loss damages. The defense didn't want a cooperative solution to the issue, they wanted to file this "emergency motion" in hopes they could convince the Court to dismiss the case. This is their longball.

   **3.    Allowing the evidence does nothing to change the course of trial.
         Striking the evidence is akin to dismissal.**

Trial has been continued. The evidence at issue relates specifically to mitigation of damages. This issue was going to be argued in trial regardless. The evidence at issue impacts the value of economic loss. It reduces Plaintiff's damages by approximately $700,000.00. Allowing Plaintiff to testify about all of her damages does not change the course of the trial. However, striking the evidence – as suggested in the Defendant's motions in limine, is akin to dismissal of the case. Although not directly at issue here, if

the Court is even remotely considering striking evidence as a sanction here, it should consider the Eighth Circuit's position on this.

The Eighth Circuit has cautioned that the "[e]xclusion of evidence is a harsh penalty, and should be used sparingly." *ELCA Enters., Inc*, 53 F.3d at 190. "[A] district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case" but that "discretion narrows as the severity of the sanction or remedy it elects increases." *Wegener*, 527 F.3d at 692. Where exclusion of evidence is akin to a dismissal of a claim, the court should consider "the possibility of lesser sanctions," such as a continuance, monetary sanctions, or partial exclusion. *Heartland Bank*, 335 F.3d at 817; *see also Wegener*, 527 F.3d at 693 (if the court had admitted evidence that was not timely disclosed, a continuance would have likely been necessary). Striking the evidence at issue would change the course of this case.

## 4. The evidence is critically important for both sides to assure full and final justice with an accurate economic loss assessment.

The evidence at issue supports Plaintiff's damages arguments. It is necessary foundation for the Plaintiff's testimony on the value of her economic loss. Because it is favorable to the defense, this evidence is also important for Lockheed Martin.

Sanctions are not appropriate under these facts. The motion should be denied, outright.

E.     **MS. DEERING IS BLAMELESS AS TO ALLEGED DISCOVERY RULES VIOLATIONS. IF THE COURT FINDS A SANCTION IS APPROPRIATE, IT WOULD BE INEQUITABLE TO PUNISH HER FOR THE ACTIONS OF HER LAWYERS.**

As set out above, sanctions are not appropriate under the circumstances of this case. Plaintiff timely updated her attorneys about her job search efforts and her employment. *See* Ex. A to Egan Decl. (Fessler Decl. §20, 34) Plaintiff's attorneys inadvertently failed to make sure the discovery was actually supplemented. (Egan Decl.; Fessler Decl. §§21-22, 32-35) Inadvertence aside, pursuant to Rule 37(c) this Court certainly has authority to levy sanctions here should it decide sanctions are appropriate. As made clear above, Plaintiff does not believe sanctions are necessary or proper under these facts, but to the extent this Court disagrees, any sanction should be levied against Plaintiff's attorneys, not the Plaintiff personally. Although a litigant generally chooses counsel at its peril, *see Link v. Wabash R.R.*, 370 U.S. 626, 633-34, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962), "'justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings.'" *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987) [*62]  (quoting *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982)); *see also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (recognizing, in a similar context, the "strong policy that cases be decided on the merits" and that imposition of a dismissal sanction should include consideration of "the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney" because "we seldom dismiss claims against blameless clients").

In *Lolatchy*, the court reversed the sanction of default imposed upon the defendants because:

> the defendants [were] blameless. There had been no prejudice to the plaintiff [because the discovery had been fully answered before the hearing on the default motion]. Any dilatory action was on the part of the attorney, not the defendants, it was not drawn out, and continued at the most for a time span of only a few months. No sanctions short of default were attempted by the district court. The only sanction it ever imposed was default as to liability.

*Id.* 816 F.2d at 953. Although recognizing that opposing counsel's frustration in preparing for trial "may be a sufficient reason for sanctions short of default judgment," the court held that it "should not suffice as a reason for depriving the [litigants] of their day in court." *Id.* at 954. *See Hildebrandt v. Vilsack*, 287 F.R.D. 88 (D.D.C. 2012) (dismissal is appropriate as a deterrent measure only when the client is aware of the attorney's misconduct); *Lee v. Walters*, 172 F.R.D. 421 (D. Or. 1997)(imposing sanctions only on counsel where discovery violations were responsibility of attorney, and not his client); *Curtin v. Curtin*, 90 F.R.D. 582 (N.D. Ohio 1981)(declining to impose sanctions on plaintiff where failure to comply with discovery requests were due to neglect of plaintiff's former counsel); *Cf.*, *Burger v. Mays*, 176 F.R.D. 153, 155 (E.D. Pa. 1997)(granting reconsideration of denial of motion in limine without initially considering it on its merits where defendant's counsel failed to respond to the motion would prevent a manifest injustice as it would be "unfair to punish [defendant] so harshly for the carelessness of his attorney."). The United States Court of Appeals for the Third Circuit has increasingly emphasized that where a party's attorney – and not the party itself – has been responsible for the discovery violation, sanctions should be imposed on the lawyer, and not the client.

*Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund* 29 F.3d 863

(1994); *citing*, *Carter v. Albert Einstein Medical Center*, 804 F.2d 805 (3d. Cir. 1986) ("we

have increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather

than on a client who is not actually at fault.")

In *Lee*, Plaintiff filed a motion pursuant to Fed R. Civ. P. 37 after defendants violated

multiple court orders to produce witness for deposition and to completely respond to

request for request for the production of documents. In response, Defendants failed to offer

any excuse for their non-compliance with the Court's orders other than defense counsel's

busy schedule. After noting that "in fixing the amount of the sanction, the court may

consider a party's entire course of conduct during the proceedings", the district court-

imposed sanctions on defense counsel and not defendants:

> Although plaintiffs have not requested an allocation of the sanctions between
> defendants or their attorney, FRCP 37 contemplates that the burden will fall
> on the individual responsible for the offending conduct. It is clear that all of
> the violations are the responsibility of Mr. Barnes, not of his individual
> clients. Therefore, the aware of expenses should be imposed only against Mr.
> Barnes.

*Barnes*, 172 F.R.D. at 435-36. *See also*, *Weiss v. Fed. Ins. Co.,* 2022 WL 35742 (Denying

a Rule 37 motion to strike an expert witness and assessing terms against attorneys and not

the party – stating in dicta: "With admirable directness, Plaintiff's counsel requests that,

should "the Court feel that punishment is in order, the Court should assess that punishment

against Plaintiff[']s counsel, not Plaintiff for counsel's error"). This lengthy string of

precedent support's Plaintiff's plea to this Court that assessing terms against the Plaintiff

when the attorneys are actually to blame is unjust, and conflicts with the intent of Rule

37(c). If the Court believes punishment in the form of sanctions is required here, sanction the responsible attorneys.

## V.   CONCLUSION

Defendant has made a final attempt to avoid trial on the merits. But this attempt – clothed in a motion to dismiss – should be denied. Here, Plaintiff testified inaccurately in a line of questioning that was unclear. Defendant knew she had testified inaccurately and failed to follow up. Plaintiff had already produced the documents that showed her testimony was inaccurate. Disclosures were inadvertently withheld in this case as a result of a series of mistakes made by Plaintiff's attorneys. Any prejudice caused by the delayed disclosures has been cured by the trial continuance. Ergo, the delay in supplementing this information was harmless.  Ergo, sanctions are not appropriate.  If the Court feels a sanction is appropriate, it should be against Plaintiff's attorneys. Plaintiff's requests permission to proceed to a trial on the merits.


**AVISEN LEGAL, P.A.**

Dated:  June 21, 2023                                      By: /s/ *William J. Egan*
                                                                            William J. Egan (#0166029)
                                                                            901 Marquette Ave.,  Suite 1675
                                                                            Minneapolis, MN 55402
                                                                            (612) 584-3400 Main
                                                                            (612) 455-3974 Direct
                                                                            (612) 437-4830 Fax
                                                                            began@avisenlegal.com

**INNOVA LAW GROUP, PLLC**

By: */s/ Heidi J.K. Fessler*
Heidi J. K. Fessler (#0226798)
15624 Europa Avenue North
Hugo, MN 55038
Minneapolis, MN 55402
(651) 407-7151 Main
(651) 278-3895 Direct

**CONARD NELSON SCHAFFER PLLC**

By: /s/ *Kaarin Nelson Schaffer*
Kaarin Nelson Schaffer (#0386919)
121 S. 8th St., Suite 1425
Minneapolis, MN 55402
Main: (612) 808-9827
kaarin@conardnelson.com

GILBERT LAW FIRM, P.S.

By: s/William A. Gilbert
William A. Gilbert, WSBA #30592
421 W. Riverside Ave, Suite 353
Spokane, WA  99201
(509) 321·0750
(509) 343·3315
bill@wagilbert.com

**ATTORNEYS FOR PLAINTIFF**