# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DANIEL'LA DEERING,

        Plaintiff,

v.

LOCKHEED MARTIN CORPORATION,

        Defendant.

Civil Action No. 0:20-cv-1534 (DSD/BRT)

**DEFENDANT LOCKHEED MARTIN CORPORATION'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS EMERGENCY MOTION FOR THE SANCTION OF DISMISSAL WITH PREJUDICE**

**INTRODUCTION**

Far from taking responsibility and accountability for her clear acts of dishonesty and discovery abuses, Plaintiff Dani Deering and her lawyers attempt to distract the Court with unsubstantiated claims that Plaintiff was "confused" in her deposition when she lied and that Plaintiff is merely a victim of the multiple "mistakes" of her counsel. The truth, however, is that Plaintiff is a 25-year-plus experienced employment litigator, and she has shown an unwavering penchant to lie throughout this litigation, not merely to Lockheed Martin but to this Court as well. In addition, Plaintiff's Response contains many false and misleading statements and omissions and confirms that *she* (not her lawyers, though they were complicit) engaged in an ***intentional*** pattern of deception in this case. Confronted with serious evidence that *she* (not her lawyers) sat in the witness chair and lied at her deposition and then hid evidence over a 19-month span, Plaintiff submits no declaration, takes no accountability, and makes no apology. Plaintiff is not a victim, and she cannot hide behind the multiple alleged "mistakes" of her lawyers to avoid responsibility for her repeated misconduct. Shockingly, since filing its Motion for Sanctions, Lockheed Martin has learned of even more perjury and misrepresentations by Plaintiff during her deposition and in a filing with this Court, which only further demonstrates that dismissal with prejudice is the only adequate sanction.

## ARGUMENT

**A.      Lockheed Martin Has Discovered Additional Perjury and Misrepresentations by Plaintiff That Alone Warrant Dismissal.**

Based on revelations in Plaintiff's Response, Lockheed Martin's own continued investigation,[1] and new documents just produced by Plaintiff on ***June 22, 2023*** (even though she has had them in her possession for ***almost two years***), it is now clear that Plaintiff committed additional acts of perjury in her deposition, and she filed a false sworn declaration with this Court in response to Lockheed Martin's Summary Judgment Motion that perpetuated the same lie she told in her deposition about her employment.

First, Lockheed Martin has now learned that Plaintiff lied in her deposition on November 1, 2021, when she testified that she was ***currently*** employed at nVent (in a clear effort to hide that she had recently obtained a new and more lucrative job). On June 22, 2023, Plaintiff produced nVent paystubs, which had been in her possession for almost two years, that revealed that Plaintiff's last day of employment at nVent was ***October 22, 2021***—i.e., just ten days ***before*** her deposition. Ex. A, DD003749 (nVent pay stub showing "10/22/2021" as the last date through which Plaintiff was paid). Despite obviously knowing that she no longer worked at nVent and to avoid revealing her new, more lucrative job and

---

[1] As outlined in Lockheed Martin's initial brief, Plaintiff's dishonesty did not surface until June 7, 2023. Lockheed Martin is thus continuing to investigate and uncover more perjurious and dishonest conduct by Plaintiff.

hide her reduced damages, Plaintiff testified unequivocally in her deposition that she was *currently employed* at nVent on November 1, 2021. This was false.[2]

Lest Plaintiff's counsel tries to suggest that Plaintiff was confused or tired, her false testimony was given in the first five minutes of her deposition, just moments after she swore to tell the truth:

> **Q.**   Where are you currently employed?
>
> **A.**   NVent.

Ex. D, Pl. Dep. 9:13-14.

Plaintiff then compounded this false testimony by testifying about her ***current*** job responsibilities at nVent and her *current* role on the leadership team even though ***she no longer worked at nVent***. *Id.* 9:20-11:10. Plaintiff's videotape deposition testimony displays Plaintiff's stunning willingness to blatantly lie and obscure the truth. Ex. E, Pl. Videotape Dep. 0:00-6:01. Plaintiff's long-delayed production of her final paystubs from

---

[2] Plaintiff's pattern of deception did not begin in her deposition, but rather, when she served her interrogatory responses where Lockheed Martin asked about her post-Lockheed employment efforts. On March 30, 2021, Plaintiff's counsel served the one and only "supplement" to Plaintiff's interrogatory response regarding her post-Lockheed Martin employment. In that response, Plaintiff stated that she was ***currently*** working as a "contract attorney" at Land O'Lakes making "125/hour" with "no benefits." Jacobs Decl. ¶ 3 and Ex. B and C. Plaintiff verified that response under oath on April 6, 2021. Jacobs Decl. ¶ 3 and Ex. B and C. The verified response, however, ***makes no mention of nVent***, where Plaintiff had been working ***since February 2021***. Ex. C. Neither Plaintiff nor her attorneys ever voluntarily disclosed her nVent employment; rather, Lockheed Martin's attorneys discovered it on their own in April 2021 on social media and had to demand that Plaintiff sign a release so Lockheed Martin could obtain employment records from nVent. Jacobs Decl. ¶ 10. Plaintiff made a clear attempt to conceal her mitigation efforts and she continued that deception in her deposition by hiding that she had obtained a new more lucrative job. Ironically, Mr. Egan now tries to rely on that false interrogatory response to suggest that Plaintiff acted in good faith to supplement discovery. ECF No. 230.

nVent is just another example of her pattern of obscuring the truth and furthering a lie told in her deposition.

Second, Lockheed Martin has just discovered that in Plaintiff's opposition to Lockheed Martin's summary judgment brief, she submitted a false declaration that perpetuated the lie that she was still working at nVent. On March 24, 2022—**_four months after she had left nVent and started working at Anaplan_**—Plaintiff submitted a sworn declaration (ECF No. 153) to this Court attaching her resume, representing that her "present" employment was with nVent. Plaintiff did not want the Court or Lockheed Martin to know about her actual (more lucrative) job at Anaplan.

Third, Plaintiff's counsel's attestations that they did not know about Plaintiff's discussions with Anaplan at the time of her deposition (ECF No. 230, Egan Decl. ¶ 11; ECF No. 231, Fessler Decl. ¶ 8) reveal that Plaintiff also lied in her deposition when she testified that she had produced to her attorneys "everything related to [her] job search":

> Q.   Okay. So in discovery, you know, we asked, obviously, for all documentation relating to your efforts to find alternative employment outside of Lockheed Martin. Do you remember those requests?
>
> **A.   Yes.**
>
> Q.   Did you provide us everything that you have in your possession with regard to your efforts?
>
> **A.   I did.**
>
> Q.   So there's no emails, notifications, or anything that you failed to produce?
>
> **A.   I produced everything related to my job search.**

Ex. D, Pl. Dep. 153:3-13. Plaintiff had signed an Anaplan offer letter by October 12, 2021, and presumably had written communications about her application and the job offer, yet none of those documents were produced before her deposition. Thus, Plaintiff's sworn testimony that she provided all such documents to her attorneys was a lie.

**B.    Plaintiff Is No Innocent Bystander, and Her Misconduct Amounts to Bad Faith, Not Innocent Mistakes.**

Plaintiff's argument that she did not engage in "bad faith" but just made "two misstatements" that were compounded by "an accumulation of [attorney] errors" falls flat considering the new evidence of intentional deceit outlined above. There is no real dispute that Plaintiff intentionally lied in her deposition, interrogatory responses, and a declaration to the Court, and it is irrelevant whether certain of the other issues were due to attorney recklessness. But if the Court is inclined to consider that argument (which is legally baseless, too, as outlined below), the facts belie the notion that these were innocent mistakes or that Plaintiff was an innocent bystander. Consider the following:

- ***Plaintiff*** served supplemental Interrogatory Responses in March 2021, which ***Plaintiff*** verified in April 2021 that falsely stated that she was only working as a "contract attorney" even though she had a job at nVent (Lockheed Martin's counsel only discovered that fact via social media months later). *Supra* at 4.

- ***Plaintiff*** failed to inform or provide documents to her counsel in October 2021 about Anaplan. *Supra* at 5. Despite the many declarations and exhibits attached to Plaintiff's Response, there is not a single piece of evidence—not even a declaration from Plaintiff—suggesting that Plaintiff ever instructed her attorneys

to disclose Anaplan (and no explanation about why her attorneys failed to do so).

- ***Plaintiff*** lied under oath at her deposition (multiple times) about having produced all documents relating to her job search efforts. *Supra* at 3-4.

- ***Plaintiff*** falsely testified that she was "currently" employed at nVent as of her November 1, 2021, deposition even though her last day was October 22, 2021. *Supra* at 4.

- ***Plaintiff*** falsely testified in her deposition that she had sought no work after February 2021, even though she had secured a new job at Anaplan on October 12, 2021. *Supra* at 5-6.

- ***Plaintiff*** submitted a sworn declaration and resume to the Court in March 2022 representing that she still "present[ly]" worked at nVent. (ECF No. 153).

- ***Plaintiff*** failed to supplement interrogatory responses at any point in 2022 identifying Anaplan as her new employer. Jacobs Decl. ¶ 12.

- ***Plaintiff*** appeared for two settlement conferences in which she (Plaintiff) submitted knew that Lockheed Martin (and, as outlined in Lockheed Martin's initial brief, likely the Magistrate Judge) were proceeding under false pretenses about her actual mitigation and compensation when evaluating the case.

- ***Plaintiff*** reviewed and approved two sets of damages calculations containing false information that she served on Lockheed Martin. Ms. Nelson Schaffer takes responsibility for the "inaccurate numbers" in the first one (served on May 25, 2023 (ECF No. 232 at ¶ 5), but there is no contention (nor could there be) that

Ms. Nelson Schaffer served this document without first sending it to and receiving approval from Plaintiff.

Plaintiff's most recent behavior further demonstrates that she applies a different standard of candor when it comes to evidence that hurts her case versus evidence that could help her case. Plaintiff spent almost two years hiding evidence about her mitigation efforts that would *decrease* her potential damages; but in sharp contrast, when something happens that could *increase* her potential damages (i.e., being laid off from Anaplan), Plaintiff is now eager to "make an additional production of documents" and make herself available for deposition. (ECF No. 229 at 5-6). Plaintiff says that she just received on June 21, 2023, (the same day her Response was due) notice that she was being terminated by Anaplan in a reduction in force ("RIF") and that this development "changes [the] damages dynamic in the case." [3] (ECF No. 229). Plaintiff, of course, provides no sworn declaration that she (an employment lawyer at the company) truly just learned about the RIF. Nor has her counsel produced all communications relating to the RIF despite Lockheed Martin's June 22, 2023, request that they do so immediately. Jacobs Decl. ¶ 8. Despite Plaintiff's excuses about alleged failed attempts to produce information about Anaplan in late 2022, they never contacted Lockheed Martin's counsel to inform them of the so-called mistake, alert us that a production was forthcoming, or propose that Plaintiff could be re-deposed. Jacobs Decl. ¶ 9. Plaintiff cannot excuse her deception and misconduct in hiding her mitigation efforts

---

[3] Despite her repeated misconduct during discovery to hide her mitigation efforts, Plaintiff now goes so far as to suggest that the Court should take this opportunity to allow Plaintiff to introduce a damages expert even though the deadline to do so has long passed.

by now partially producing new documents and offering to be re-deposed only when that would help to increase her alleged damages.

**C.     Plaintiff Was Not "Confused" or "Misled" or "Trapped" Into Lying About Anaplan During Her Deposition.**

It is not entirely clear why Plaintiff says she was "confused," "misled," or "trapped" into making her "misstatements" at her deposition that she had not applied or looked for work since joining nVent. *See* ECF No. 229 at 16, 18, and 21. Plaintiff complains that Lockheed Martin's counsel was "grilling" her and controlling and scrolling through a document when the questions were asked (ECF No. 229 at 6), but the video of the deposition makes it clear that Defendant's counsel's tone is pleasant (far from "grilling") and Plaintiff appears to be thinking closely about her answers. Significantly, Plaintiff's counsel did not object to any of the questions at issue despite Plaintiff's new argument that somehow the questions were confusing. Moreover, Plaintiff is a highly experienced attorney who has participated in "many, many depositions." Ex. D, Pl. Dep. 8:15-17. If she did not understand the questions asked, she knew she could have asked for clarification. And it is not as though she made just one "misstatement" in this regard. She lied in response to three (arguably four) questions on the issue of her job search efforts. *See* Ex. D, Pl. Dep.

> **Q.**     Are there any efforts beyond December of 2020 that you've made to secure other employment that are not in this document [the Appendix]?
> **A.**     **Not that I'm aware of. It's exhausting and disheartening to keep applying for jobs and not getting anything.**
>
> **Q.**     Right. Is that the reason why you haven't applied for any positions after December 2020?
> **A.**     **I don't know if I – I'll need to update that if I have. I'll have to check. I may have submitted a couple applications, but not many. I didn't start my job with nVent until February 2021, so we'll need to update that.**

**Q.**     Have you applied – have you looked for any alternative employment while you've been working for nVent?

**A.**     **No.**

**Q**     So you may have applied to a few jobs between the end of December and February of 2021, but you haven't done any since. Is that correct?

**A.**     **That's correct.**

Ex. D, Pl. Dep. 161:23-162:18 (emphasis added).

Plaintiff's counsel now argues that Plaintiff was "unsure" about her answers and claims that she testified "that she may have applied for more jobs, and acknowledged – twice – that her discovery responses needed to be updated relative to her job search efforts." ECF No. 229 at 6. What Plaintiff ***actually*** said, however, is that she was unsure whether she applied to jobs ***between December 2020 and February 2021*** (when she started at nVent). Ex. D, Pl. Dep. At 162:4-10. Yet when asked if she looked for or applied to any jobs ***after*** she started at nVent in February 2021, Plaintiff testified ***falsely and unequivocally***—twice—that she had not. This is a lie. *Id.* at 162:11-18. Similarly, Plaintiff's reference to needing to "update" the appendix of her job search efforts pertained to updates for the nVent job and any jobs she applied to ***before*** February 2021. *Id.* at 162:6-18. And even if Plaintiff needed to update her discovery responses further, her testimony that she had not looked for work after nVent when she had just signed an offer letter at Anaplan was blatantly false.

Next, Plaintiff makes a troubling and untrue statement. She contends that Lockheed Martin's counsel "had the documents that speak to Plaintiff's testimonial error in their possession when the error was made" and that "Mr. Burkhardt already had [the documents]

– he just wasn't showing it to her. (Egan Decl. ¶ 39)." ECF No. 229 at 2 and 6. Plaintiff

cites Paragraph 39 of Mr. Egan's declaration (ECF No. 230). That paragraph does not at

all support the proposition. It states:

> 39. Attached as Exhibit F is Exhibit 13 from Plaintiff's November 1,
> 2021, deposition. This was a list of jobs that Plaintiff had applied for and was
> provided to Defendant on December 23, 2020, as her appendix to her
> Answers to Interrogatories. On July 27, 2021, I produced to Defendant
> documents relating to job applications made by Plaintiff, some of which were
> submitted to potential employers after that list was created.

But Exhibit F to Mr. Egan's declaration (ECF No. 230-6) is a transcript of an unrelated

witness's deposition (Billie Jo Schuermann).[4] And Mr. Egan produced **no** documents on

July 27, 2021. *See* Jacobs Decl. ¶ 11. Further, Mr. Egan undisputedly never produced the

relevant documents relating to Anaplan from October 2021 at any time before Plaintiff's

deposition or at any time after that. Plaintiff's statement to the contrary is yet another

misrepresentation to the Court.

Next, Plaintiff makes the absurd argument that she in fact disclosed Anaplan in her

interrogatory responses. ECF No. 229 at 19. It is true that Plaintiff listed Anaplan on her

appendix to her interrogatory responses in March 2021 as a place she applied to (and was

not hired at) back **in 2019**. The job that Plaintiff applied to at Anaplan in 2019 was listed

as "Employment Counsel." (ECF No. 230-8 at 4). Plaintiff was not hired for that job. The

---

[4] To the extent that the reference to Exhibit "F" is an error and Mr. Egan meant to refer to
Exhibit "H" (which **is** the appendix of job applications that was discussed at Plaintiff's
deposition), that reference makes no sense either because the date of the last application on
that document is December 13, 2020 (ECF No. 230-8 at 5) and could not have revealed to
Lockheed Martin that Plaintiff had recently applied to and signed an offer letter at Anaplan
ten months later in October 2021.

**different** role that Plaintiff applied to and **got** in October 2021 (and failed to disclose) was for "Associate General Counsel, Commercial Americas." Offer Letter, ECF No. 222-7 at 5. Plaintiff's assertion that her 2021 Anaplan application and job offer were disclosed is false.

Plaintiff also fails to tell the Court one more critical fact: on December 1, 2022, Plaintiff affirmed that her testimony was true when she signed an Errata Form without making a single change to her testimony, which was under oath. Ex. F. Thus, even if the Court were to believe that her testimony contains "misstatements" and not lies—which is implausible based on everything above—she had a chance to correct those "misstatements" and did not.

**D.**   **The Law Is Clear That Plaintiff Cannot Avoid Sanctions By Blaming Her Lawyers.**

The United States Supreme Court has rejected Plaintiff's "blame my lawyers" defense as "wholly inconsistent with our system of representative litigation." *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962). In *Link*, the Court affirmed an order dismissing an action with prejudice when the plaintiff's lawyer (not the plaintiff) failed to appear at a pretrial conference and was dilatory throughout the case:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'

*Id.* (citation omitted). The Court continued:

> Surely if a criminal defendant may be convicted because he did not have the presence of mind to repudiate his attorney's conduct in the course of a trial, a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit. And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice. But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant.

*Id.* at 634 n.10. The Eight Circuit, of course, follows *Link.* In *Siems v. City of Minneapolis*, 560 F.3d 824, 827 (8th Cir. 2009), the Eighth Circuit affirmed a dismissal with prejudice for plaintiff's counsel's dilatoriness—even where (unlike here) plaintiff was not even arguably complicit in misconduct. The Court explained: "[w]e are not wholly unsympathetic to Siems's position. The record does not contain any evidence that Siems himself contributed in any way to the dilatory actions of his counsel. However, we have long held that litigants choose their counsel at their own peril." *Id.; see also Nolting v. Yellow Freight Sys., Inc.*, 799 F.2d 1192, 1200 (8th Cir. 1986) ("It is well-settled that a party is bound by the acts of her attorney. Although partial dismissal of an action due to counsel's malfeasance is a severe sanction, Nolting 'voluntarily chose this attorney as [her] representative in the action, and [she] cannot now avoid the consequences of the acts or omissions of this freely selected agent.'" (citations omitted)).

The Sixth Circuit recently rejected an argument like the one Plaintiff makes here. In *Stanley v. FCA US, LLC*, 51 F.4th 215, 221 (6th Cir. 2022), the plaintiff/appellant argued that the district court erred when it dismissed his employment lawsuit because he failed to

disclose the lawsuit in a bankruptcy petition.[5] The Court rejected the notion that the misrepresentation could be blamed on the plaintiff's counsel: "neither bad legal advice nor attorney inadvertence automatically excuses an omission" and "Stanley gives us no reason to depart from the general rule set forth in *Link* that litigants are bound by the actions of their attorneys." *Id.* (internal quotations and citations omitted). Another federal court reached a similar conclusion just three months ago. In *Landfall 2, Inc. v. Datascore-AI, LLC*, the court entered judgment against a plaintiff who—just like Ms. Deering—"now wishes to lay blame [for discovery misconduct] at the feet of its previous lawyer" for discovery misconduct of which it (the plaintiff) was purportedly unaware. No. 22-80801, 2023 WL 2866556, at *1 (S.D. Fla. Mar. 21, 2023). The court explained that (just as here) "[t]he record is replete with examples of [plaintiff's representative] having personal knowledge of the discovery misconduct and consistent failures to meet deadlines" and "and in any event, [plaintiff] is bound by the actions of its lawyer." *Id.* (citing *Link*, 370 U.S. at 633-34).

Here, more than in *Link* or any case cited above, Plaintiff should be held to account for her various attorneys' alleged misconduct. First, and most importantly, the cases Plaintiff cites where courts issued sanctions to attorneys rather than litigants all involved situations where the litigant was ***entirely*** "blameless." ECF No. 229 at 29-31; *see also*

---

[5] The district court's dismissal was on the grounds of judicial estoppel (rather than as a sanction)—that is, the plaintiff was estopped from asserting a claim in his civil case based on the statement in his bankruptcy petition that he had no such claim. *Id.* The difference is irrelevant: what matters is that the Sixth Circuit rejected his attempt to blame his counsel.

*Bergstrom v. Frascone*, 744 F.3d 571, 575 n.1 (8th Cir. 2014) (noting that conduct "***may*** be [] less worthy of dismissal with prejudice" if it is "attributable ***solely*** to a litigant's attorney" (emphasis added)). For all the reasons above, that is not this case. Second, Plaintiff is an experienced employment attorney who no doubt carefully and strategically selected Mr. Halunen as her counsel. Plaintiff must have known—as virtually the entire Minneapolis employment law community knew—that Mr. Halunen was known for "push[ing] ethical boundaries." *Gifford v. Target Corp.*, 723 F. Supp. 2d 1110, 1122 (D. Minn. 2010). Third, Plaintiff is a woman of resources (she made more than $500,000 per year at Lockheed Martin and perhaps more than that at Anaplan).[6] She had the means to—and did—hire a team of experienced attorneys, including a discovery and e-discovery expert (Ms. Fessler). *See Our Team*, Innova Law Group PLLC, *https://www.innovalawgroup.com/our-team-2* (last visited June 26, 2023) (detailing the many publications and presentations Ms. Fessler has given on the topics).

Plaintiff's attempt to blame her lawyers is remarkable for one final reason: she does not submit her own declaration or any evidence that she what unaware of what happened here. Given her 25 years of experience and the significance of this case, Plaintiff no doubt reviewed, approved, and was copied on every discovery response, document production, damages calculation, and settlement letters in the case. She does not and cannot submit a declaration to the contrary.

---

[6] Lockheed Martin ***still*** does not know the details of Plaintiff's all-in Anaplan compensation and benefits, as she has only produced her 2021 offer letter and her 2022 W-2.

Plaintiff knew exactly what she was doing from the moment she failed to disclose nVent in her March 2021 interrogatory responses to her lies in her deposition and her failure to disclose her new job, and it is shameful that she is now laying it at her attorneys' (and a paralegal's) feet.[7]

## E.   Dismissal Is the Only Appropriate Sanction Based on This Record.

Contrary to Plaintiff's contention, the Eighth Circuit, other Circuit Courts of Appeal, and District Courts within the Eighth Circuit have all held that dismissal is the appropriate sanction when a party lies under oath, makes false statements to the Court and opposing parties, and engages in fraudulent behavior in discovery. *See Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001) ("When a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the court."); *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999) (same); *Knapp v. Convergys Corp.*, 209 F.R.D. 439, 442 (E.D. Mo. 2002) ("[D]ismissal is the only sanction that will effectively punish [Plaintiff], lessen the prejudice to [Convergys], and protect the integrity of this proceeding." (citations omitted)); *see also Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721, 724 (7th Cir. 2008) (affirming sanction of dismissal with prejudice and noting that "it does not take a graduate degree to understand that it is unacceptable to hide evidence and lie in a deposition").

---

[7] If Plaintiff does believe this is all her lawyers' fault and she can prove it, her remedy— as the Supreme Court made clear in *Link*—is a malpractice suit.

Although Plaintiff does not discuss (or acknowledge) the analogous case law, the facts here are even more egregious than in those cases. For example, as discussed in Lockheed Martin's initial brief, *Knapp* contained strikingly similar facts, but the plaintiff there was not as sophisticated as Plaintiff and apologized to the Court for her perjury—yet dismissal was still warranted. 209 F.R.D. at 442. Here, Plaintiff—a seasoned employment lawyer with extensive knowledge of the discovery process—refuses to take accountability or apologize for her misconduct and doubles down in her Response by making more misleading statements and accusations. Dismissal is thus even more warranted here.

### 1.   <u>Dismissal is appropriate under the Court's inherent authority or Rule 37.</u>

The sanction of dismissal is appropriate under this Court's inherent authority. "[W]hen a litigant's conduct abuses the judicial process . . . dismissal of a lawsuit [is] a remedy within the inherent power of the court." *Pope v. Fed. Express Corp*., 974 F.2d 982, 984 (8th Cir. 1992). Such a sanction is ***not*** based on prejudice to the other party; instead, the purpose of the sanction is "to penalize those whose conduct may be deemed to warrant such a sanction, but [also] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1978).

As discussed above, Plaintiff has engaged in a pattern of deceit, hiding documents and information, making false statements under oath to the Court and to Lockheed Martin, and abusing the discovery process. The Eighth Circuit has held that such conduct justifies the sanction of dismissal. *See Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999)

(noting "pattern of deceit by presenting false and misleading answers and testimony under oath" and upholding sanction of dismissal under **both** Rule 37 and the Court's inherent authority). Notably, the Eighth Circuit has held that a party's status as an attorney means that the party cannot complain to be surprised about the consequences of its misconduct, making the sanction of dismissal particularly appropriate. *Id.*

Plaintiff argues that this case should be analyzed under Rule 37, not the Court's inherent authority, and that the absence of a Court order therefore precludes dismissal. That is wrong, as the Eighth Circuit has held that in these circumstances a dismissal sanction is appropriate under the court's inherent authority, Rule 37, or both. *Chrysler Corp.*, 186 F.3d at 1019.

But even under Rule 37, the Eighth Circuit has made clear that a dismissal sanction may be appropriate—even in the absence of a court order—where (as here) the aggrieved party did not discover the misconduct until the eve of trial:

> After it was presented with the last-minute disclosure of the letter, the court reviewed interrogatories and document requests along with the corresponding responses by the defendants. The court soon concluded that, not only was the letter plainly responsive to multiple requests, but so too were many, if not all, of the forty-two documents obtained from the other members of the informal group which had been either sent to, or written by, the defendants. Thus discovery responses by Carey and Danis denying the existence of communications and documents were clearly false in regards to at least those documents, and probably more.

> Even if the court had accepted the explanation offered by the defendants as to why they failed to produce the letter to Grossman, it was faced with a large number of other documents that were clearly responsive to multiple interrogatories and document requests, yet had not been produced. The court concluded that the answers to the interrogatories and document requests were plainly perjurious and not credible, as was the defendants' deposition

18

testimony. This alone is sufficient violation of discovery rules to warrant sanction by the district court.

*Id.* at 1020. The same reasoning applies here: Plaintiff's production of Anaplan documents on the eve of trial revealed that she had testified falsely at her deposition, submitted a false declaration to the Court, made false statements in her confidential settlement submissions, made false statements in her disclosures, signed false answers to interrogatories, and engaged in a pattern of discovery deception, hiding responsive documents and information throughout the discovery process. Dismissal is appropriate here for the same reasons that the Eighth Circuit affirmed dismissal in *Chrysler Corp*.

The cases cited by Plaintiff do not argue against dismissal—in fact, they actually support Lockheed Martin's position. Plaintiff cites *Keefer* and *Schoffstall*, both of which affirm the sanction of dismissal. *Keefer v. Provident Life & Acc. Ins. Co.*, 238 F.3d 937, 940 (8th Cir. 2000); *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000). Similarly, in four other cases cited by Plaintiff, the Eighth Circuit Court of Appeals affirmed the grant of sanctions. *Universal Coops. v. Tribal Co-Operative Mktg. Dev. Fed'n of India, Ltd.*, 45 F.3d 1194, 1196 (8th Cir. 1995); *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *ELCA Enters. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995); *Laclede Gas Co. v. G.W. Warnecke Corp.*, 604 F.2d 561, 565-66 (8th Cir. 1979). And the Supreme Court affirmed the issuance of sanctions in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, (1991) and **reversed** the Third Circuit and **re-imposed** the sanction of dismissal in *National Hockey League*, 427 U.S. at 643. The Fourth Circuit affirmed sanctions in *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir.

2003). At the District Court level, the court struck a party's pleadings and imposed the penalty of a default judgment in *Ascentium Capital LLC v. Littell*, No. 20-4215, 2021 WL 6095550, at *10 (W.D. Mo. Dec. 22, 2021)and the Court held that sanctions were appropriate under the Court's inherent authority in *Barash v. Kates*, 585 F.Supp.2d 1347, 1368 (S.D. Fla. 2006) ("The Court SUA SPONTE ORDERS THAT Barash be sanctioned pursuant to the Court's inherent authority"). Thus, ***eleven*** of the cases cited by Plaintiff— nearly all of Plaintiff's cases discussing sanctions—found that the sanctions at issue were appropriate.

The Eighth Circuit did hold that lesser sanctions were appropriate in *Heartland Bank v. Heartland Home Fin., Inc.*, but based its conclusion on the absence of a written order by the District Court, which made it impossible for the Eighth Circuit to assess whether the offending party had acted in bad faith and whether there had been prejudice to the Court or the opposing party. 335 F.3d 810, 816-17 (8th Cir. 2003). Similarly, the Eighth Circuit held in *Sentis Group, Inc. v. Shell Oil Co.* that the evidence upon which District Court relied (an alleged bribe) to impose the sanction was unreliable—an issue not present here. 559 F.3d 888, 900 (8th Cir. 2009). And the Supreme Court overturned sanctions in *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers* based on the foreign criminal implications involved in a foreign national's production of documents— again an issue not present here. 357 U.S. 197, 207 (1958).[8]

---

[8] Outside of the Eighth Circuit, the D.C. Circuit held that sanctions were not appropriate in *Shepherd v. ABC, Inc.* because a party did not consciously disregard its discovery obligations. 62 F.3d 1469, 1481 (D.C. Cir. 1995). Obviously, that is not the case here.

Notably, Plaintiff does not even attempt to cite a case analogous to this case or provide a single example in which a court declined to dismiss claims in analogous circumstances. The only party providing analogous cases is Lockheed Martin—and in those cases, the courts imposed the sanction of dismissal. This Court should do the same here.

### 2. A continuance or re-opening discovery is not a sufficient sanction.

Plaintiff's suggestion that a continuance and more discovery would somehow solve the problems created by her discovery misconduct is wrong. Plaintiff does not grasp that perjury and hiding evidence are different from simply being delinquent in discovery responses. They are intentional attacks that "strike[] at the core of the judicial function and warrant[] a dismissal of one's right to participate at all in the truth-seeking process." *Arnold v. Cnty. of El Dorado*, No. 10-3119, 2012 WL 3276979, at *4 (E.D. Cal. Aug. 9, 2012), *report and recommendation adopted*, No. 10-3119, 2012 WL 13046344 (E.D. Cal. Sept. 27, 2012) (emphasis added). This makes sense: once a party demonstrates a willingness to intentionally lie under oath, there is no way for other parties to be on a level playing field at trial.

Moreover, a continuance will not cure the prejudice that Lockheed Martin has suffered from Plaintiff's deceit. Lockheed Martin has spent substantial time and money litigating this case under false pretenses for more than two years. Plaintiff's suggestion that a continuance could cure all that demonstrates that she *still* does not appreciate the severity of her actions and the damage they caused. The court in *Knapp* summed up this point perfectly: "[Defendant] has been irreparably prejudiced by Plaintiff's discovery violations:

the discovery deadline has passed, [Defendant] has presented and received ruling on a motion for summary judgment, and the Court has no inclination to re-open discovery in order to allow [Defendant] to delve into areas about which it should have been informed months ago." 209 F.R.D. at 443.

Further, Plaintiff has been asking this Court for additional discovery and experts on numerous occasions over the last six months, (*see, e.g.*, ECF No. 190), and the Court has been steadfast in denying such request given the limited scope of this case, (*see* ECF Nos. 191, Hearing Tr. at 35:9-48:25 and 193). Plaintiff's suggestion that a grant of additional time to take ***more discovery*** and allow ***her*** to introduce an expert—i.e., that her misconduct should inure to her benefit and alleviate the prejudice to Lockheed Martin—is absurd.

Last, Plaintiff suggests that because Plaintiff lied about "damages" issues, that somehow should mitigate the sanction. ECF No. 229 at 27. That is wrong, of course (and once again shows Plaintiff's failure to grasp the severity of what she has done, as perjury about damages is no less serious than perjury on any other topic). *Knapp*, 209 F.R.D. at 443 (sanction of dismissal where Plaintiff lied about new employment, which was "crucial to [Defendant's] defense against her claims of emotional distress); *Negrete*, 547 F.3d at 724 (affirming sanction of dismissal with prejudice where the plaintiff in personal injury case perjured himself about "how badly he was injured").

## CONCLUSION

Plaintiff's perjury and dishonesty throughout discovery "strike[] at the core of the judicial function and warrant[] a dismissal of [her] right to participate at all in the truth-seeking process."

Dated: June 26, 2023

/s/ Joseph G. Schmitt
Joseph G. Schmitt, Reg. No. 231447
NILAN JOHNSON LEWIS PA
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
Tel:  (612) 305-7500
Email: *jschmitt@nilanjohnson.com*


/s/ Michael S. Burkhardt
Michael S. Burkhardt (admitted pro hac vice)
Benjamin K. Jacobs (admitted pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel:  (215) 963-5000
Email: *michael.burkhardt@morganlewis.com*
      *benjamin.jacobs@morganlewis.com*

*Attorneys for Defendant Lockheed Martin Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, I caused a copy of the foregoing document to be served upon all counsel of record.

*/s/ Benjamin K. Jacobs*